### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:10CV-00562-JHM**

**WILLIAM WHITLOCK, et al.**                                          **PLAINTIFFS**

**VS.**

**FSL MANAGEMENT, LLC, et al.**                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by the Plaintiffs, William Whitlock, David

Skyrm, Michael Brown, Holly Goodman, Kristin Moore, and Gary Muncy, for class certification

pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(1) and (3) [DN 71]. Fully briefed,

this matter is ripe for decision.

### I.  BACKGROUND

Plaintiffs, William Whitlock, David Skyrm, Michael Brown, Holly Goodman, Kristin Moore,

and Gary Muncy, brought an action against Defendants, FSL Management, LLC, FSH Management,

LLC, Entertainment Concepts Investors, LLC, and Cordish Operating Ventures, LLC ("Cordish")

alleging wage and hour violations and defamation.  The named Plaintiffs are former employees of

three nightclubs that operate in Louisville, Kentucky: Tengo sed Cantina, Angel's Rock Bar, and

Hotel.  The clubs are located in "Fourth Street Live," a one block entertainment district located in

downtown Louisville.  Tengo sed Cantina and Angel's Rock Bar are organized under the name FSL

Management, LLC ("FSL"). Hotel is organized under the name FSH Management, LLC ("FSH").

Plaintiffs allege that all three nightclubs are managed by Entertainment Concept Investors, LLC

("ECI").  The nightclubs employ a variety of individuals including servers (shot girls and beer tub

girls), bartenders, security personnel, and barbacks.[1]

Plaintiffs assert claims for unpaid wages under KRS Chapter 337.  Plaintiffs allege that Defendants acted in violation of KRS § 337.275 by requiring them to work off-the-clock without payment of an hourly wage which included time engaged in promotional activities, set up, clean up, and employee meetings.  Plaintiffs contend they are entitled to damages equivalent to the statutory minimum wage of $7.25 per hour for all hours worked off the clock.  Plaintiffs further allege that Defendants violated KRS § 337.065 by requiring employees to participate in a tip pool and to share tips with barbacks at a rate set by the Defendants.  In addition to these class wage and hour claims, Plaintiffs Whitlock and Moore allege they were defamed by Defendants in the manner in which they were terminated.

Plaintiffs now seek class certification of all non-salaried employees of FSL and FSH who worked without receiving hourly wages from January 30, 2007, through January 30, 2012.  Plaintiffs also seek certification of the following subclass of "[a]ll tipped employees of [FSL and FSH] who were required to pay a portion of their tips to other employees and were required to participate in a mandatory tip pool from January 30, 2007 through January 30, 2012." (Plaintiffs' Memorandum in Support of Motion for Class Certification at 1.)

## II.  STANDARD FOR CLASS CERTIFICATION

The United States Supreme Court requires a district court to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class.  In re American Medical Systems, Inc., 75 F.3d 1069, 1078-79 (6th Cir. 1996).  The district court has broad discretion in determining whether to certify a class, but that discretion must be exercised within the framework

---

[1]Barbacks are individuals who restock glassware, beer, and other items in the bar area.

2

of Fed. R. Civ. P. 23.  Id.; Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); Coleman v. General

Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir. 2002); Boggs v. Divested Atomic Corp., 141

F.R.D. 58, 62-63 (S.D. Ohio 1991).  The party seeking certification bears the burden of proof.  In

re American Medical Systems, Inc., 75 F.3d at 1079.  To meet this burden, Plaintiffs must show that

all four prerequisites of Rule 23(a) are satisfied.  The requirements of Rule 23(a) are as follows:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there
> are questions of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Once these conditions are satisfied, the party seeking certification must then

demonstrate that the class falls within one of the subcategories of Rule 23(b).  Coleman, 296 F.3d

at 446; Fed. R. Civ. P. 23(b).

"'[S]ometimes it may be necessary for the court to probe behind the pleadings before coming

to rest on the certification question,' Gen. Tele. Co. of Southwest v. Falcon, 457 U.S. 147, 160

(1982), and 'rigorous analysis' may involve some overlap between the proof necessary for class

certification and the proof required to establish the merits of the plaintiffs' underlying claims." In

re Whirlpool Corp. Front-Loading Washer Products Liability Litigation, 678 F.3d 409, 417 (6th Cir.

2012)(citing Wal–Mart Stores, Inc. v. Dukes, —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374

(2011).  However, "'whether the class members will ultimately be successful in their claims is not

a proper basis for reviewing a certification of a class action.'"  Id. (quoting Daffin v. Ford Motor

Co., 458 F.3d 549, 552 (6th Cir. 2006)).  Thus, "plaintiffs are not required to show any likelihood

of success on the merits of their underlying claims before a class can be certified; they are, however,

required to establish their right to class certification."  In re Southeastern Milk Antitrust Litigation,

2011 WL 3793777, *2 (E.D. Tenn. August 25, 2011)(citing Beattie v. Century Tel. Inc., 511 F.3d

554, 560 (6th Cir. 2007).

Furthermore, "'the determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge.'" In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 317 n. 19 (3d Cir. 2008)(quoting In re Initial Public Offering Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006)("A trial judge's finding on a merits issue *for purposes of a Rule 23 requirement* no more binds the court to rule for the plaintiff on the ultimate merits of that issue than does a finding that the plaintiff has shown a probability of success for purposes of a preliminary injunction." Id. at 39.); see also Unger v. Amedisys Inc., 401 F.3d 316, 323 (5th Cir. 2005)("[T]he court's determination for class certification purposes may be revised (or wholly rejected) by the ultimate factfinder . . . .").

## III. DISCUSSION

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder "impracticable."  "While this requirement is commonly referred to as a 'numerosity' requirement, the real issue is whether the plaintiff seeking class certification has demonstrated impracticability of joinder." Turnage v. Norfolk Southern Corp., 307 Fed. Appx. 918, 921 (6th Cir. 2009) (citation omitted).  The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 570 (6th Cir. 2004).

In the present case, the proposed class and subclass consists of hundreds of past and present employees of Defendants.  Plaintiffs represent that there are at least 424  members of the proposed

class and subclass.  This is sufficient to satisfy the numerosity requirement.  <u>England v. Advance Stores Co. Inc.</u>, 263 F.R.D. 423, 453 (W.D. Ky. 2009).

### 2.  Commonality

To satisfy Rule 23(a)(2), the proponents of certification of the class must demonstrate that "there are questions of law or fact common to the class."

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-01 (1979). . . . Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'"  <u>Id.</u> at 701 . . . . For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."

<u>In re American Medical Systems</u>, 75 F.3d at 1080 (<u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 155 (1982)).

Essentially, commonality requires demonstrating that class members "have suffered the same injury," which does not mean merely that they have all suffered a violation of the same provision of law.  <u>Wal–Mart Stores, Inc. v. Dukes</u>, ⸺ U.S. ⸺, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (citation omitted).  The commonality inquiry seeks "'not the raising of common 'questions'-even in droves-but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"  <u>Id.</u> (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L.Rev. 97, 132 (2009)).  The Sixth Circuit has held that the commonality test is qualitative rather than quantitative, "that is, there need be only a single issue common to all members of the class."  <u>In re American Medical</u>, 75 F.3d at 1080; <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388, 397 (6th Cir. 1998).  "The mere fact that questions peculiar to each individual member of the class remain after the common questions of the

defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988)(cited with approval in In re American Medical, 75 F.3d at 1080).[2] See also Powers v. Hamilton County Public Defender Commission, 501 F.3d 592, 619 (6th Cir. 2007). Significantly, the Sixth Circuit instructs that class certification is appropriate "'if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.'" In re Whirlpool Corp. Front-Loading Washer Products Liability, 578 F.3d at 420 (quoting Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir.1998)).

In challenging the Plaintiffs' satisfaction of the commonality requirement, Defendants argue that the discretion of individual general managers at each nightclub to set daily practices within the confines of the ECI Employee Handbook defeats a showing of commonality. Defendants also argue that the conflicting employee declarations preclude a finding of any common policy or practice of requiring off-the-clock work, tip pooling, and tip sharing which could unify Plaintiffs' claims. See Garcia v. Sun Pacific Farming Co-op., 2008 WL 2073979 (E.D. Cal. May 14, 2008), aff'd 359 Fed. Appx. 724 (9th Cir. 2009); Alonzo v. Maximus, 275 F.R.D. 513 (C.D. Cal. 2011); Aburto v. Verizon California, Inc., 2012 WL 10381 (C.D. Cal. Jan. 3, 2012); Rosales v. El Rancho Farms, 2012 WL 292977 (E.D. Cal. Jan. 31, 2012). Due to the lack of a common policy or practice, Defendants maintain that the potential claim of each class member relating to unpaid wages and mandatory tip pooling and sharing would have to be examined on an individual basis.

---

[2]Unlike Rule 23(b)(3), which also requires that such common questions predominate over individual questions, the existence of significant common legal or factual issues is enough to meet Rule 23(a)(2)'s threshold commonality requirement.

### a. Organization and Management

First, Defendants maintain that class certification is improper because each business is operated by independent general managers and management teams.  Defendants argue that ECI's role is merely a consultant to the nightclubs providing coaching and leadership to the managers of FSH and FSL. Further, Defendants claim that the general managers implement their own practices and procedures, including procedures for opening and closing, cash checkout, scheduling of employees, topics and length of meetings, and other operational issues.

After a review of the record, Defendants characterization of ECI's relationship with FSL and FSH as one of consulting, as opposed to management, is not supported in the record.  Jake Miller[3], currently Senior Vice President of ECI, testified in his deposition that ECI provides consulting services on the "design, construction administration, marketing, food and beverage operations, [and] entertainment" for venues around the United States including those operated by FSL and FSH. (Miller Dep. at 6.)   Miller is responsible for interviewing and approving the hire of General Managers responsible for Tengo sed Cantina, Angel's Rock Bar, and Hotel.  Miller testified that he has input into personnel decisions including decisions to hire and fire employees at all levels of FSL and FSH  (Id. at 18.)  Miller approves budgets over $500 for special events at the nightclubs.  (Id. at 47.)   Miller also testified that he approves changes to employee uniforms and anything that changes the concept at the clubs. (Id. at 47-48.)  ECI sets clubs' policies and procedures.  ECI's Employee Handbook governs the employment relationship between employees and FSL or FSH.  ECI handles accounting for the nightclubs. (Miller Dep. at 54-56.)  In fact, ECI forms are used for

---

[3]Miller served as Vice President and Operations Executive for ECI between 2006 and 2010.  He currently reports to Reed Cordish, who is the President of ECI. (Miller Dep. at 9.)

separating employees and the record reflects that a human resource representative for ECI filed the notice of appeal in Plaintiff Whitlock's unemployment claim. (Ex. E and F, Motion for Class Certification.)

The record further reflects that Jimmy Smith, current Director of Operations at ECI, reports directly to Miller and is responsible for oversight of the three venues in Louisville. Smith testified that in addition to providing oversight of general managers, he is also responsible for leadership, coaching, and support of the clubs. Prior to becoming the Director of Operations for ECI, Smith served as a district manager employed by FSL Management between January of 2008 and 2010. As district manager, Smith testified that he was responsible for Tengo sed Cantina, Angel's Rock Bar, and Hotel. (Smith Dep. at 6-10.) Smith testified that while he was district manager he would have weekly meetings with his general or operations managers, sales managers, and VIP managers. (Id. at 22-24.)

Accordingly, the record reflects that each of the three nightclubs in question has an onsite manager who reports to Jimmy Smith, Director of Operations at ECI. Smith reports to Jake Miller, Senior Vice President of ECI, who reports to Reed Cordish, President of ECI. While Hotel, Angel's Rock Bar, and Tengo sed Cantina have individual general managers, ECI through its agents, Miller and Smith, exert control over polices, practices and operations at the nightclubs in question. Furthermore, although there might be slight variations in some of the procedures for opening and closing, cash checkout, scheduling of employees, and topics and length of staff meetings from nightclub to nightclub, the common question in this case is whether Defendants enforced an unlawful, unofficial company policy or practice requiring employees to work off- the-clock without payment of an hourly wage in violation of KRS § 337.275 and/or requiring employees to participate

in a tip pool and to share tips with barbacks in violation of KRS §337.065. Thus, given the facts presented, the organizational structure of the Defendants does not destroy commonality.

**b. Policy**

In challenging the commonality requirement, Defendants primarily argue that the conflicting employee declarations submitted by Defendants preclude a finding of any common policy or practice of requiring off-the-clock work, tip pooling, and tip sharing which could unify Plaintiffs' claims. See Garcia v. Sun Pacific Farming Coop., 2008 WL 2073979; Alonzo, 275 F.R.D. 513; Aburto, 2012 WL 10381; Rosales, 2012 WL 292977.

### i. Off-The-Clock Work

Plaintiffs allege that employees were required to participate in promotional teams for different themed events the clubs were planning. The promotional teams consisted of groups of employees who went to other nightclubs, bars, sporting events, concerts, and hotels to promote activities at Tengo sed Cantina, Angel's Rock Bar, and Hotel. These teams would pass out flyers or other advertising material. Plaintiffs maintain that Defendants also required employees (1) to make phone calls to potential customers to sell them a "happy hour party" using lists of potential customer names and phone numbers provided by club management; (2) to promote club events using social media such as Facebook and MySpace; (3) to have a certain number of people on the club's "guest list," a list of people who were admitted to the clubs without paying the cover charge; and (4) to interact with taxicab drivers to encourage them to promote the clubs to their patrons. (See, e.g., Whitlock Dep. at 100-106.) The named Plaintiffs have testified that while the employees were

required to participate, the employees were not paid for performing these promotional activities.[4] These promotional activities were not listed on the work schedule, although they were organized and attendance was noted.   Plaintiffs Skyrm and Muncy, former managers at the nightclubs, testified that they enforced these policies at the direction of Jimmy Smith.

Plaintiffs also allege that employees were also not paid their hourly rate for engaging in set-up and closing work, including cleaning the bar area and restocking.  (Whitlock Dep. at 86; Moore Dep. at 102-103; Muncy Aff. at ¶¶ 4, 7; Dye Aff. ¶¶6-7; Hides Aff. ¶5; Donnie Chasteen Aff. ¶¶ 5-7; Kayrouz Aff. ¶ 4; Stephen Cross Aff. ¶ 4; Heine Aff. ¶ 5; Jones Aff. ¶ 4.)

Defendants maintain that according to ECI policy "[a]ll hourly employees are required to use the Company's time clock in order to document their work time accurately.  Employees must clock in promptly at the start of each shift and may not clock in before their scheduled start time." (Employee Handbook at 24, Defendants' Response, Exhibit 17.)  Defendants represent that this has always been Defendants' policy that non-salaried employees are to be clocked-in and earning an hourly wage while performing work on Defendants' behalf.  Additionally, Defendants state that employees are always paid in full for all required promotional activity.  Defendants tender the affidavits of current employees and two former employees in which they represent that at no point

---

[4]Skyrm Dep. at 127("If I felt employees hadn't gone out enough that week and promoted the days, I would move them from shifts and I would take shifts away throughout the course of the – their week or the next schedule."); Moore Dep. at 97 ("We had meetings every Saturday night after our shift, and it was always discussed in the meeting that if you were not promoting, you would be given fewer shifts or possibly terminated."); Whitlock Dep. at 104 ("As part of my job, I was required to book a number of happy hour calls.  There was a board that was kept in the office about how many were booked and showed up.  And we were told in meetings that we were to – we were to book them.  If we didn't have the amount, then we would be put on the patio bar, or we wouldn't have a job."); Brown Dep. at 46; Manager Meeting Agendas.  See also Kimberlee Dye Aff. ¶¶ 3,5; Brittney Harkins Aff. ¶¶ 4-5; Amy Lamber Aff. ¶¶4-5; James Smith Aff. ¶¶7-9; Mary Heine Aff. ¶4,6.

during their non-salaried employment with the Defendants' businesses were they forced by management to work without being paid an hourly wage.  (Belew Aff. ¶ 8; Darville Aff. ¶ 9; Proctor Aff. ¶ 8; Paul Aff. ¶ 5; Rudd Aff. ¶ 5; Matter Aff. ¶¶ 7-8; B. Smith Aff. ¶ 7.)  Additionally, District Manager Smith testified in his deposition that "we would bring in college kids that would go out and flier." (Smith Dep. at 30.)  When asked if any employees such as bartenders or servers ever go out and hand out flyers, Smith testified that they did not. (Id. at 32.)

After a review of the evidence presented by the parties, the Court finds that the weight of the evidence falls in favor of finding a common policy or practice of requiring off-the-clock promotional activities in violation of Kentucky wage and hour laws.  In addition to the anecdotal evidence of individual employees submitted by the Plaintiffs, Plaintiffs tendered manager meeting notes of staff meetings led by District Manager Smith reflecting a policy or practice of requiring employees to engage in uncompensated promotional activities.  While Smith in his February 28, 2012, affidavit tries to distance himself from the manager meetings, his deposition clearly reflects that he organized and ran the weekly manager meetings,  composed the agenda, and had someone take notes.  (J. Smith Dep. at 22-26.)  Furthermore, while Smith's affidavit appears to imply that Defendants' employees were naturally outgoing and engaged in promotional activities solely for their own benefit, the manager meeting notes between 2008 and 2009 belie any suggestion that promoting was not a mandatory part of Defendants' business practice.  For example,

- September 17, 2008: "Promo Teams: *Who did/who didn't . . . Daniel says everyone is cooperating very well." (September 17, 2008 Manager Meeting Notes.)

- November 19, 2008:  "TSC Happy Hour Parties: (a) How many from staff? (b)Who? (c) Who will be losing a shift at the end of the month?" (November 19, 2008, Manager Meeting Agenda.)

- October 27, 2009: "Staff promoting must improve or I must find a new staff. Brad and I are not going to drag our feet on this any longer.  Happy Hour bookings have to improve.  The shot girls are the only ones actively getting after it at this point, and that is unacceptable."  (TSC October 27, 2009, Manager Meeting Agenda.)

- November 16, 2009:  "Our promoting has to improve.  The majority of Rockbar staff gets out and promotes but we have some dead weight.  It is time for them to step up or find another job." (ARB November 16, 2009, Manager Meeting Agenda.)

Under these circumstances, the cases cited by Defendants, Garcia, Alonzo, Alburto, and Rosales, are distinguishable.  Despite the conflicting anecdotal evidence submitted by Defendants, "[w]hen a common policy can be established, individual variations will not always defeat class certification."  Rosales v. El Rancho Farms, 2012 WL 2684979, *5 (E.D. Cal. 2012) (citing Delagarza v. Tesoro Ref. & Mktg. Co., 2011 WL 4017967, *6 (N.D. Cal. September 8, 2011) ("that some workers can leave the premises with permission does not negate Plaintiffs' assertion that there is a general default policy against leaving the premises")).  See also In re Whirlpool Corp. Front-Loading Washer Products Liability, 578 F.3d at 420.   Therefore, the Court finds that the commonality requirement of Rule 23(a)(2) has been met.

### ii.  Tip Pooling and Sharing

Throughout work shifts, customer tips were placed in communal tip jars.  At the end of the night, the tips were split by the bartenders.  Plaintiffs contend that the tip pooling arrangement was mandated by management and was not within the discretion of the tipped employees. (Whitlock Dep. at 68; Muncy Dep. at 40.)  Additionally, the named Plaintiffs testified that the bartenders were required to pay 20 percent of their tips to the barbacks.  This amount was set by management and was not determined by the bartender. (Goodman Dep. at 63; Muncy Dep. at 43; Whitlock Dep. at 68; Moore Dep. 92; Skyrm Dep. at 115; Kimberlee Dye Aff. ¶¶ 8,9; Amber Hides Aff. ¶¶ 6, 7;

Whitney Kayrouz Aff. ¶5; Alta Howard Aff. ¶¶4, 5; Richard Jones Aff. ¶ 5.)

Defendants argue that tip pooling is a customary practice in the bar and nightclub industry. According to Defendants, Kentucky wage and hour law permits employers to inform employees of the existence of a voluntary pool and the customary tipping arrangement of the employees at the establishment. Defendants maintain that they have never mandated any tip pooling within their businesses and have never required employees to share the tips they receive. In support of this argument, Defendants submit affidavits from current employees and three former employees. (Belew Aff. ¶¶ 4-6; Proctor Aff. ¶¶ 4-6; Paul Aff. ¶¶ 2-4; B. Smith Aff. ¶¶ 2,4; Matter Aff. ¶¶ 2-6; Rudd Aff. ¶¶2-4; Payne Aff. ¶¶ 2-7.) Defendant represents that tip pooling is strictly voluntarily. In 2010, ECI instituted a written policy providing in part as follows: "Any tip pooling is strictly voluntary. If you feel like you are being forced to pool your tips, please speak to the General Manager or contact Human Resources Manager Ashley Shaw." (Exhibit 15, Defendant's Response.) Relying exclusively on the caselaw from the district courts of California, Defendants argue that the conflicting employee declarations preclude a finding of any common policy or practice of mandatory tip pooling and sharing.

The Court finds that Defendants' arguments do not demonstrate that there are no common questions of law or fact. The common question of fact with regard to this subclass is whether there was a common policy or practice of Defendants to require tipped employees of FSL and FSH to participate in mandatory tip pooling and sharing. "This unofficial policy is the common answer that potentially drives the resolution of this litigation." Ross v. RBS Citizens, N.A., 667 F.3d 900, 909 (7th Cir. 2012).

While the Court has reviewed the affidavits submitted by Defendants, the Court finds it

significant that all but three affidavits relied upon by Defendants are from current employees and managers. Thus, the Court views the affidavits from current employees and managers as less credible due to bias. Additionally, unlike the case law from the district courts of California relied upon by Defendants, the Sixth Circuit instructs that class certification is appropriate "'if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.'" In re Whirlpool Corp. Front-Loading Washer Products Liability, 578 F.3d at 420 (quoting Walters, 145 F.3d at 1047). See also Delagarza, 2011 WL 4017967, *6 ("that some workers can leave the premises with permission does not negate Plaintiffs' assertion that there is a general default policy against leaving the premises")). In light of this case law, the fact that some of the class members may have escaped the alleged mandatory tip pooling and sharing practice does not negate the finding of commonality.

Furthermore, contrary to Defendants' argument, the fact that some employees worked for companies with similar policies and practices does not destroy commonality in the present case. Because another company may or may not have violated similar Kentucky wage and hour laws does not negate Defendants liability.

Therefore, for the reasons set forth above, the Court finds that the commonality requirement of Rule 23(a)(2) has been met.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the proponents of class certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." See Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir. 1976).

See also Beattie v. CenturyTel, Inc., 511 F.3d 554, 561 (6th Cir. 2007). "'[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" In re American Medical, 75 F.3d at 1082 (quoting Newberg and Conte, § 3.13 at 3-76). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Newberg and Conte, § 3.13 at 3-77; see also Beattie, 511 F.3d at 561. The existence of defenses against certain class members does not defeat typicality. Ross v. RBS Citizens, N.A., 2010 WL 3980113, *3 (N.D. Ill. Oct. 8, 2010). "'Typical does not mean identical, and the typicality requirement is liberally construed.'" Id. (quoting Gaspar v. Linvatec Corp., 167 F.R.D. 51, 57 (N.D. Ill.1996)).

The Court finds that the named Plaintiffs' claims are typical of the class and subclass as they are based on the same legal theory – failure to pay wages as required for work that was performed off-the-clock in violation of KRS § 337.275 and/or requiring tipped employees to pool and share tips in violation of KRS § 337.275. While each nightclub may have different opening and closing hours, different procedures with respect to cash checkout, scheduling of employees, and topics and length of staff meetings, these factual distinctions are not enough to destroy typicality. Beattie, 511 F.3d at 561. In the present case, if the trier of fact finds that employees of the three nightclubs managed by ECI were required to participate in off-the-clock promotional activities, unpaid set-up and closing activities, and/or tip pooling and sharing, such a determination would advance the interest of each member of the class and subclass. See Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 252 (2d Cir. 2011). Finally, in the present case, any potential "defenses" defendants may

have against particular plaintiffs do not undermine typicality.  Contrary to Defendants' argument, the fact that some class members were terminated by Defendants, may have failed to report income to the IRS, sought re-employment with Defendants, relieved themselves somewhere other than the bathroom while on the job, or were charged with murder, is not an affirmative defense to the question of whether Defendants required Plaintiffs to engage in work practices that violated the Kentucky wage and hour laws.  If presented at trial, these items might be relevant to the witnesses credibility.  They are not affirmative defenses "likely to usurp a significant portion of the litigant's time and energy."  Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 484 (S.D. Ohio 2004).  Because the named Plaintiffs' claims are typical of those of the proposed class and those of potential subclasses, the proposed class satisfies the typicality requirement of Rule 23(a)(3).

### 4. Adequacy of Representation

Finally, to satisfy the requirement of Rule 23(a)(4), the proponents of certification must demonstrate that 'the representative parties will fairly and adequately protect the interests of the class."  The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"  In re American Medical, 75 F.3d at 1083 (quoting Senter, 532 F.2d at 525); Boggs, 141 F.R.D. at 66.  Rule 23(a)(4) tests "'the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."  In re American Medical, 75 F.3d at 1083 (quoting Cross v. National Trust Life Insurance Co., 553 F.2d 1026, 1031 (6th Cir. 1977)).  "'[I]f there is more than one named representative, it is not necessary that all the representatives meet the Rule 23(a)(4) standard; as long

16

as one of the representatives is adequate, the requirement will be met.'" <u>Cook v. Rockwell Intern.</u> <u>Corp.</u>, 151 F.R.D. 378, 387 (D. Colo. 1993)(quoting 7A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, § 1765 at 277 (2d ed. 1986)).

Defendants assert that a number of direct conflicts exist between class representatives and other members of the class. Specifically, Defendants contend that conflicts exist (1) between hourly employees in the putative class and named Plaintiffs David Skyrm and Gary Muncy who served in the role of salaried managers and (2) between the several class representative bartenders and the barbacks with whom they were allegedly made to share tips.[5]

First, Skyrm and Muncy do not have a conflict of interest that affects the proposed class members. While they acted as managers in the nightclubs and admit to having enforced the policies or practices in question, they were also hourly employees who allege that Defendants required them to work off-the-clock and pool and share tips. Second, with respect to the tip pooling subclass, it would appear to the Court that the barbacks would not fall within the class definition. The barbacks have been characterized as non-tipped employees, were not required to pay a portion of their tips to others, and were the beneficiaries of the alleged policy or practice. Therefore, there is no inherent conflict between the bartenders or servers and the barback. Accordingly, no evidence exists that the representative Plaintiffs differ from the class members in any significant circumstance with respect to this issue which would obstruct their ability to vigorously represent the proposed class.

Furthermore, the Defendants in this case do not challenge the qualification or ability of

---

[5]In a separate section of Defendants' Response, Defendants also argue that the proposed class cannot include members employed after January 1, 2010, because the named plaintiffs cannot fairly and adequately represent their interests. The Court will address this argument below.

Plaintiffs' counsel to effectively represent the class.  The court has reviewed and considered the qualifications of Plaintiffs' counsel and find that counsel have sufficient experience and ability to fairly and adequately represent the interest of the class.

For these reasons, the Court finds that the named Plaintiffs adequately represent the interests of the class as a whole and the requirements of Rule 23(a)(4) have been satisfied.

### B. Rule 23(b) Requirements

After satisfying Rule 23(a)'s four prerequisites, the party seeking certification must demonstrate that the action satisfies one of the requirements of Rule 23(b).  Plaintiffs argue that they meet the criteria of both Rule 23(b)(1) and Rule 23(b)(3).

### 1. Rule 23(b)(1)(A) and Rule 23(b)(1)(B)

Rule 23(b)(1)(A) allows for class certification when "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." A class action is appropriate under this subsection when "'the party is obliged by law to treat the members of the class alike.'"  Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan, 654 F.3d 618, 633 (6th Cir. 2011)(quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997)).  Generally, only actions for declaratory or injunctive relief may be certified under Rule 23(b)(1)(A).  See Babineau v. Federal Exp. Corp., 576 F.3d 1183, 1195 (11th Cir. 2009).  "Certification is not appropriate simply because 'some plaintiffs may be successful in their suits against a defendant while others may not.'" Pipefitters Local 636, 654 F.3d at 633 (quoting In re Bendectin Prod. Liab. Litig., 749 F.2d 300, 305 (6th Cir.1984)); see also 7AA Wright, Miller, & Kane, supra, § 1773 (3d ed. 2010) (explaining that the rule "requires more than

18

a risk that separate judgments would oblige the opposing party to pay damages to some class members and not to others or to pay them different amounts"). In the present case, Plaintiffs are seeking only compensatory and liquidated damages, and as a result, certification under Rule 23(b)(1)(A) is not appropriate.

Rule 23(b)(1)(B) allows for certification where "individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests,' Rule 23(b)(1)(B), such as in 'limited fund cases, . . . in which numerous persons make claims against a fund insufficient to satisfy all claims.'" Dukes, 131 S.Ct. at 2558 n. 11(quoting Amchem, 521 U.S. at 614). See also Adams v. Anheuser-Busch Companies, Inc., 2012 WL 1058961, *11-12 (S.D. Ohio 2012). As with certification under Rule 23(b)(1)(A), certification pursuant to Rule 23(b)(1)(B) is inappropriate in actions seeking primarily monetary damages, with the exception of limited fund cases. See Haney v. Recall Center, 2012 WL 1739257, *5 (W.D. Ark. May 9, 2012). Therefore, in the present case, certification pursuant to Rule 23(b)(1)(B) is not appropriate.

**2. Rule 23(b)(3)**

Plaintiffs also contend that certification of the class is proper under Rule 23(b)(3). A class action may be maintained under Rule 23(b)(3) if the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." Fed. R. Civ. P. 23(b)(3). Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) of Rule 23 in that both require that common questions exist, but subdivision (b)(3) contains a more stringent requirement that common issues "predominate" over individual issues. In re

19

American Medical, 75 F.3d at 1084.  The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "The court, therefore, must balance concerns regarding issues common to the class as a whole with questions affecting individual class members." O'Connor v. Boeing North America, Inc., 184 F.R.D. 311, 339 (C.D. Cal. 1998).

Defendants argue that Plaintiffs fail to satisfy the predominance and superiority requirements of Rule 23(b)(3) because individual issues regarding liability and personal damages will predominate over the common issues identified by Plaintiffs.  Defendants contend that any collective class adjudication would require proof from a multitude of managers and employees to determine initially the existence of any alleged unwritten *de facto* policy, therefore defeating Plaintiffs' argument of predominance.  Defendants maintain that if this case were to proceed to trial, the Court would be required to hold mini-trials on issues related to managers' and assistant managers' practices with regard to clocking-out and closing procedures.  Defendants further argue that the Court would be required to make individualized calculations and damage assessments for each potential class member.

### a. Predominance

Courts have found that class certification is appropriate in cases in which the plaintiff class challenged a common practice or policy of failing to compensate employees appropriately for time worked, despite the presence of some factual variation in the claims.  See, e.g., Ross v. RBS Citizens, N.A., 667 F.3d at 908–910 (finding that a state-wide overtime class was proper in light of the alleged common policy of denying employees earned overtime compensation by instructing them

not to record such time).[6]  The predominance requirement is met if this common question is at the heart of the litigation.  <u>Powers</u>, 501 F.3d at 618.  Plaintiffs' alleged common policy or practice of requiring non-salaried employees to work off-the-clock and of requiring tipped employees to participate in tip pooling and sharing lies at the heart of this case.  Despite the fact that individual questions may arise,  those individual questions do not dictate the conclusion that a class action is impermissible.  <u>See In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation</u>, 2009 WL 5184352, *6 (W.D. Ky. Dec. 22, 2009); <u>Sterling</u>, 855 F.2d at 1197.  "'A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions.'"  <u>Blihovde v. St. Croix County, Wis.</u>, 219 F.R.D. 607, 620 (W.D. Wis. 2003) (citing Newburg & Conte, § 4.25 at 4-84 (3d ed. 1992)).  "Common questions need only predominate: they need not be dispositive of the litigation."  <u>In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation</u>, 2009 WL 5184352, *6.

Further, individualized damage claims do not defeat the Rule 23(b)(3) class.  "Varying

---

[6]<u>Kritzer v. Safelite Solutions, LLC</u>, 2012 WL 1945144, *4 (S.D. Ohio May 30, 2012)(the factual and legal issues concerning whether the booting up and shutting down of the computers were or should have been part of the plaintiffs' compensable work day are common questions that make up the crux of the case); <u>Chavez v. Don Stoltzner Mason Contractor, Inc.</u>, 272 F.R.D. 450, 455-56 (N.D. Ill. Feb. 28, 2011)("common practice of failing to fully compensate employees for overtime hours lies at the heart of this case"); <u>Ripley v. Sunoco, Inc.</u>, — F. Supp. 2d —, 2012 WL 2402632, *5 (E.D. Pa. June 26, 2012)("In this case, there is predominance of common issues of law and fact. The key issue is whether Defendant had a policy or practice of failing to pay certain employees overtime for time they worked over forty hours a week."); <u>Kernats v. Comcast Corp.</u>, 2010 WL 4193219, *7 (N.D. Ill. Oct. 20, 2010) ("[T]he Plaintiffs have alleged that an unofficial, company-wide practice exists that denies putative class members overtime or compensation for time worked. The Court concludes that . . . the common issue of whether a company-wide practice exists to deny overtime or compensation will predominate over the variations in methods used to accomplish the alleged policy"); <u>Barragan v. Evanger's Dog & Cat Food Co., Inc.</u>, 259 F.R.D. 330, 334–35 (N.D. Ill. Aug. 27, 2009)("[T]he common issues of the pay practices of Evanger's and whether they violate the IMWL will be the main focus").

damage levels rarely prohibit a class action if the class members' claims possess factual and legal commonality." Eddleman v. Jefferson Co., Ky., 1996 WL 495013, * 6 (6th Cir. 1996).  When damages vary, the court may bifurcate the lawsuit so that the defendants' liability can be determined initially. Blihovde, 219 F.R.D. at 621("If there are genuine common issues . . . then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.'" Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003)).  Additionally, courts have also recognized the use of a magistrate or special master to address any individualized issues including damages or decertification of the class after a finding of liability.  For these reasons, the Court finds that Plaintiffs have satisfied the predominance requirement.

Defendants' reliance on England v. Advance Stores Co. Inc., 263 F.R.D. 423 (W.D. Ky. 2009) does not alter this determination.  Significant distinctions exist between England and the present case.  In England, an employee of an auto parts store filed a state-wide class action against the company alleging that employees were subject to a statewide *de facto* company policy requiring off-the-clock work and were denied statutorily mandated lunch and rest breaks.  In England, the potential class plaintiffs worked at 86 different stores, each with different management.  The district court noted that the plaintiff based his claim of a *de facto* policy solely on his experience at one store.  As a result, the district court struck plaintiff's class claims for lack of predominance concluding that claims members would have had to show that each of the store managers and assistant managers in the 86 stores in the state had departed from written company policy prohibiting such conduct.  In contrast, in the present case, the Plaintiffs' claims are limited to three nightclubs, all of which are managed by ECI, through their agents Jimmy Smith and Jake Miller.  Unlike the

plaintiff in <u>England</u>, Plaintiffs have submitted the weekly manager meeting notes documenting a common policy or practice requiring employees to engage in unpaid promotional activities. Plaintiffs have also presented the deposition testimony of former managers, Skyrm and Muncy, who testified that ECI, FSL, and FSH maintained a policy requiring off-the-clock work, tip pooling, and tip sharing from employees.  The limited class size and the evidence produced in the present case were notably missing in <u>England</u>.

### b. Superiority

The Court also finds that the class action is the "superior" method of adjudicating the controversy here.  For Rule 23(b)(3) certification to be proper, a class action  must also be the most fair and efficient method of resolving this case. See Fed. R. Civ. P. 23(b)(3).  In analyzing that question, courts must consider four nonexclusive factors: (1) the interest of the class members in maintaining separate actions; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties managing a class action." See Fed. R. Civ. P. 23(b)(3).

Considering the evidence in the record, the Court finds that litigating the existence of a common policy or practice for the class as a whole would "both reduce the range of issues and promote judicial economy."  <u>Dodge v. County of Orange</u>, 226 F.R.D. 177, 184 (S.D.N.Y. Jan. 27, 2005).  Even if the damages determination is ultimately resolved on a non-class basis, "the issues and evidence relevant to these individual adjudications would be substantially narrowed."  <u>Id.</u> Additionally, given the fact that recovery of many of the potential class members may be relatively small and that many of the class members may not be aware that they have a claim, the interest of

individual class members in maintaining separate actions is also small.  See, e.g., Kritzer v. Safelite Solutions, LLC, 2012 WL 1945144, *4 (S.D. Ohio May 30, 2012); Beattie, 511 F.3d at 567.  The Court is not aware of any other actions that have been brought by individual members of the putative class, nor does it find undue difficulties in managing the putative class. Id.  Therefore, the Court concludes that  "a class action provides the most feasible and efficient method of determining liability." Blihovde, 219 F.R.D. at 622.

Thus, the Court concludes that Plaintiffs have satisfied the requirements of Rule 23(a) and (b)(3).

## C. Class Definition

In their motion, Plaintiffs move this Court to certify a class of all non-salaried employees of FSH and FSL who worked without receiving hourly wages from January 30, 2007, through January 30, 2012.  Plaintiffs also ask this Court to certify a subclass for the same time period for tipped employees who participated in mandatory tip pooling and sharing.  Defendants argue that because none of the named Plaintiffs worked for any of the Defendants after January 1, 2010, the claims of the potential class members employed or hired after that date are not fairly encompassed by the named Plaintiffs' claims.  Thus, Defendant contends that the named Plaintiffs cannot fairly or adequately represent the interests of these potential class members.  Additionally, Defendants argue that the named Plaintiffs have made no effort to show that their claims are common or typical of the claims of the potential class members employed after January 1, 2010.  Defendants contend that Plaintiffs have not argued, much less proven, that Defendants used the same alleged uniform policies from January 2010 through January 30, 2012.  Plaintiffs do not address this argument in their reply.

In the employment context, "courts have held that former employees have standing to

represent a class consisting of both current and past employees." In re FedEx Ground Package Systems, Inc., — F.R.D. —, 2012 WL 1430956, *5 (N.D. Ind. April 24, 2012)(citing Cross v. National Trust Life Ins. Co., 553 F.2d 1026, 1030–1031 (6th Cir.1977)("[t]hat plaintiffs are no longer employees of the defendant does not deprive them of standing to represent a class consisting of current and prospective employees.")). See also Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975). Contrary to Defendants' argument, the fact that none of the class representatives are current employees does not disqualify them from representing the entire class of current and former employees.

However, this determination does not address the issue of whether the proposed class and subclass may be defined too broadly in terms of its duration by extending the class to employees who worked through January 30, 2012. In reviewing Plaintiffs' motion for class certification, it appears that Plaintiffs selected the date the motion for class certification was filed as the end date for the class definition. Plaintiffs do not offer an explanation of their selection of January 30, 2012, as the end date. Therefore, the Court interprets the Plaintiffs' failure to address the Defendants' argument as a concession that January 1, 2010, is the appropriate end date for the class definition.

## IV.  CONCLUSION

The Court finds that Plaintiffs have satisfied the prerequisites for certification of the class under Rule 23. For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that the motion by Plaintiffs for class certification [DN 71] is **GRANTED**. Plaintiffs' counsel are appointed class counsel pursuant to Rule 23(g). The class and subclass are defined as follows:

25

A.      All non-salaried employees of FSL Management, LLC, and FSH Management, LLC, who worked without receiving hourly wages from January 30, 2007, through January 1, 2010.

B.      All tipped employees of FSL Management, LLC, and FSH Management, LLC, who were required to pay a portion of their tips to other employees and were required to participate in a mandatory tip pool from January 30, 2007, through January 1, 2010.

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for a scheduling conference to develop a class action litigation plan and address the class notification requirement pursuant to Rule 23(c)(2).

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 10, 2012

cc: counsel of record