# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:10CV-00562-JHM**

**WILLIAM WHITLOCK, et al.**                                            **PLAINTIFFS**

**VS.**

**FSL MANAGEMENT, LLC, et al.**                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by the Defendants pursuant to Federal Rules of Civil Procedure 7(b) and 23(c)(1)(C) to reconsider its class certification decision [DN 119]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

Plaintiffs, William Whitlock, David Skyrm, Michael Brown, Holly Goodman, Kristin Moore, and Gary Muncy, brought an action against Defendants, FSL Management, LLC, FSH Management, LLC, Entertainment Concepts Investors, LLC, and Cordish Operating Ventures, LLC ("Cordish") alleging wage and hour violations and defamation. The named Plaintiffs are former employees of three nightclubs that operate in Louisville, Kentucky: Tengo sed Cantina, Angel's Rock Bar, and Hotel. The clubs are located in "Fourth Street Live," a one block entertainment district located in downtown Louisville. Tengo sed Cantina and Angel's Rock Bar are organized under the name FSL Management, LLC ("FSL"). Hotel is organized under the name FSH Management, LLC ("FSH"). Plaintiffs allege that all three nightclubs are managed by Entertainment Concept Investors, LLC ("ECI"). The nightclubs employ a variety of individuals including servers (shot girls and beer tub girls), bartenders, security personnel, and barbacks.

Plaintiffs assert claims for unpaid wages under KRS Chapter 337. Plaintiffs allege that

Defendants acted in violation of KRS § 337.275 by requiring them to work off-the-clock without payment of an hourly wage which included time engaged in promotional activities, set up, clean up, and employee meetings. Plaintiffs contend they are entitled to damages equivalent to the statutory minimum wage of $7.25 per hour for all hours worked off the clock. Plaintiffs further allege that Defendants violated KRS § 337.065 by requiring employees to participate in a tip pool and to share tips with barbacks at a rate set by the Defendants. In addition to these class wage and hour claims, Plaintiffs Whitlock and Moore allege they were defamed by Defendants in the manner in which they were terminated.

By Memorandum Opinion and Order dated August 10, 2012, the Court granted Plaintiffs' motion for class certification of the wage and hour claims pursuant to Fed. R. Civ. P. 23(a) and (b)(3). The Court certified (1) a class for all non-salaried employees of FSL Management, LLC, and FSH Management, LLC, who worked without receiving hourly wages from January 30, 2007, through January 1, 2010, and (2) a subclass for all tipped employees of FSL Management, LLC, and FSH Management, LLC, who were required to pay a portion of their tips to other employees and were required to participate in a mandatory tip pool from January 30, 2007, through January 1, 2010. Defendants sought review of this decision through a petition for an interlocutory appeal to the Sixth Circuit. The Sixth Circuit denied the petition on January 31, 2013.

Defendants now move the Court to reconsider its prior Order certifying the two classes of employees in this class action in light of a recent United States Supreme Court case, Comcast Corp. v. Behrend,133 S.Ct. 1426 (2013), and the United States Supreme Court's subsequent order vacating and remanding two other cases, In re: Whirlpool Corp. Front-Loading Washer Product Liability Lit, 678 F.3d 409 (6th Cir. 2012) and Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012). In

response, Plaintiffs maintain that the decision of Comcast Corp. breaks no new ground and merely restates the standard for certification of class actions under Fed. R. Civ. P. 23(b)(3). Further, Plaintiffs argue that the Court has previously engaged in the rigorous analysis required under Rule 23(b)(3) and determined that the common issues predominate the individual issues. As a result, Plaintiffs argue that class certification is appropriate, and, therefore, the motion to reconsidered should be denied.

## II. STANDARD OF REVIEW

The Sixth Circuit recognizes that a district court may reconsider an interlocutory order both under the common law and Federal Rule of Civil Procedure 54(b). Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed. Appx. 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Id. (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)). See also United States v. Lexington–Fayette Urban Cnty. Gov't, 2008 WL 4490200, *1 (E.D. Ky. Oct. 2, 2008). "Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." Northeast Ohio Coalition for Homeless v. Brunner, 652 F. Supp.2d 871, 877 (S.D. Ohio 2009).

## III. DISCUSSION

**A. Grant, Vacate, and Remand Orders**

Contrary to Defendants' argument, the grant, vacate, and remand ("GVR") orders issued by the United States Supreme Court in In re: Whirlpool Corp. Front-Loading Washer Product Liability Lit, 678 F.3d 409 (6th Cir. 2012) and Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012), do

3

not "constitute[] a merits determination in [the defendant's] favor." In re Whirlpool Corp. Front-Loading Washer Products Liability Lit.,722 F.3d 838, 845 (6th Cir. 2013). Sixth Circuit law "is clear that a GVR order does not necessarily imply that the Supreme Court has in mind a different result in the case, nor does it suggest that [circuit's] prior decision was erroneous." Id. (citing Communities for Equity v. Mich. High Sch. Athletic Ass'n, 459 F.3d 676, 680 (6th Cir. 2006) (adhering to original decision)). "The GVR order is not equivalent to reversal on the merits, Tyler v. Cain, 533 U.S. 656, 666 n. 6 (2001); Henry v. City of Rock Hill, 376 U.S. 776, 777 (1964), nor is it 'an invitation to reverse.' Gonzalez v. Justices of the Mun. Court of Boston, 420 F.3d 5, 7 (1st Cir. 2005)." In re Whirlpool Corp., 722 F.3d at 845. The Sixth Circuit held in Whirlpool that it "must simply determine whether [the] original decision to affirm the class certification order was correct or whether Comcast Corp. compels a different resolution." 722 F.3d at 845 (citing Communities for Equity, 459 F.3d at 680–81; Kenemore v. Roy, 690 F.3d 639, 642 (5th Cir. 2012)).[1]

**B. Predominance in light of Comcast Corp v. Behrend**

Defendants move the Court to reconsider its prior Order certifying the two classes of employees in this class action in light of the recent United States Supreme Court case, Comcast Corp. v. Behrend,133 S.Ct. 1426 (2013). In Comcast, the district court certified a liability and damage class of more than 2 million current and former Comcast subscribers who sought damages for alleged antitrust violations. 133 S.Ct. at 1429-31. The plaintiff proposed four different theories of antitrust impact; however, the district court found that only one theory of antitrust impact could

---

[1]Since the United States Supreme Court's GVR order in Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012), the parties in Ross have settled their dispute, and the Seventh Circuit stayed the appeal. Tamas v. Family Video Movie Club, Inc., 2013 WL 4080649, *6 (N.D. Ill. Aug. 13, 2013).

4

be proved in a manner common to all the class members. Id. at 1430-31. Significantly, "the plaintiffs' expert calculated damages for the entire class using a model that failed to isolate the damages resulting from the one theory of antitrust impact the district court had allowed to proceed." In re Whirlpool Corp., 722 F.3d at 859. The district court certified the class, "finding that the damages related to the allowed theory could be calculated on a classwide basis." Id. at 859-860. The Third Circuit affirmed.

The Supreme Court reversed in a decision that it "described as turning 'on the straightforward application of class-certification principles.'" Id. at 860 (quoting Comcast, 133 S.Ct. at 1433.)). "Because the plaintiffs would be entitled to damages resulting only from the allowed liability theory if they were to prevail on the merits, the [Supreme] Court instructed that the 'model purporting to serve as evidence of damages . . . must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" Id. As the Sixth Circuit explained:

> Neither the Third Circuit nor the district court had required the plaintiffs to link each liability theory to a damages calculation because, those courts reasoned, doing so would necessitate inquiry into the merits, which had no place in the class certification decision. Id. The Supreme Court rejected that analysis as contradictory to Dukes, 131 S.Ct. at 2551–52 & n. 6, and as improperly permitting plaintiffs to offer any method of damages measurement, no matter how arbitrary, at the class-certification stage, thereby reducing the predominance requirement of Rule 23(b)(3) "to a nullity." Comcast Corp., 133 S.Ct. at 1433. Due to the model's inability to distinguish damages attributable to the allowed theory of liability, the Court ruled that the predominance prerequisite of Rule 23(b)(3) did not warrant certification of a class. Id. at 1435.

In re Whirlpool Corp., 722 F.3d at 860.

From Comcast and Amgen Inc. v. Conn. Retirement Plans & Trust Funds, ––U.S. ––, 133

S.Ct. 1184 (2013), the Sixth Circuit in In re Whirlpool "'glean[ed] . . . that to satisfy Rule 23(b)(3), named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members.'" Thompson v. Bruister and Associates, Inc., — F. Supp. 2d —, 2013 WL 4507740, *11 (M.D. Tenn. Aug. 23, 2013)(quoting In re Whirlpool Corp., 722 F.3d at 860). The Ninth Circuit expressed a similar understanding in a wage and hour case in Leyva v. Medline Indus. Inc., 716 F.3d 510 (9th Cir. 2013). In Leyva, "while acknowledging that under Comcast 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability,' the court held that Comcast is not a bar 'if putative class members prove [defendant's] liability' and that 'damages will be calculated based on the wages each employee lost due to [defendant's] unlawful practices.'" Thompson, 2013 WL 4507740, *11 (quoting Leyva, 716 F.3d at 514.). Based on this case law, the Court finds that decertification of the plaintiff class and subclass is not warranted.

First, Comcast Corp. reaffirms the settled rule that to satisfy Rule 23(b)(3) named plaintiffs must show that questions of law or fact common to members of the class predominate over any questions that affect only individual members. However, proving predominance does not require plaintiffs to prove that every element of a claim is subject to classwide proof: Plaintiffs need only show that common questions predominate over questions affecting only individual class members. Amgen, 133 S.Ct. at 1196; In re Whirlpool Corp., 722 F.3d at 860 . The Court previously concluded that this requirement was satisfied in this case. Plaintiffs' allege that a common policy or practice of requiring non-salaried employees to work off-the-clock and of requiring tipped employees to participate in tip pooling and sharing lies at the heart of this case. As noted above, "[m]otions for reconsideration are not intended to re-litigate issues previously considered by the Court . . ."

6

Northeast Ohio Coalition for Homeless, 652 F. Supp. 2d at 877. The Court thoroughly addressed the Rule 23(a) and the Rule 23(b) requirements in the original Memorandum Opinion and Order and will not revisit those decisions.

Second, in contrast to Comcast, if the Plaintiffs in this case prove Defendants' liability, "damages will be calculated based on the wages each employee lost due to [Defendants'] unlawful practices." Leyva v. Medline Industries, Inc., 716 F.3d 510, 514 (9th Cir. 2013) (observing that the plaintiff class "must be able to show that their damages stemmed from the defendant's actions that created the legal liability"). In other words, if liability is proven, Plaintiffs will be able to demonstrate that their damages stemmed from the Defendants' actions that created the legal liability. Id. Thus, Comcast does not require decertification.

Third, contrary to Defendants' argument, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3). In re Whirlpool Corp, 722 F.3d at 845; Butler v. Sears, Roebuck and Co., — F.3d —, 2013 WL 4478200, *4 (7th Cir. 2013). As noted previously by the Court, when damages vary, the court may bifurcate the lawsuit so that the defendants' liability can be determined initially. The Seventh Circuit in Butler recently explained that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." Butler, 2013 WL 4478200, *4 (citing Advisory Committee Notes to 1966 Amendment of Rule 23(b)(3); Pella Corp. v. Saltzman, 606 F.3d 391, 393–94 (7th Cir. 2010) (per curiam); McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 491–92 (7th Cir. 2012)). Consistent with previous Supreme Court precedent, the Seventh Circuit recognized:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

Butler, 2013 WL 4478200, *5. In fact, the Sixth Circuit held in In re Whirlpool Corp. that "[w]here determinations on liability and damages have been bifurcated, see Fed. R. Civ. P. 23(c)(4), the decision in Comcast—to reject certification of a liability and damages class because plaintiffs failed to establish that damages could be measured on a classwide basis—has limited application." 722 F.3d at 860.

In the present case, the Court previously determined that common issues regarding Defendants' liability for wage and hour violations predominate over any potential individual damages issues. While recognizing that class members will have "differing damages" or "individual damages issues," the Plaintiffs argue in their response, and the Court agrees, that these individualized damages questions do not warrant decertification of the class for liability purposes in light of the Court's previous opinion. (See Plaintiffs' Response at 10, 11.) As noted by the Sixth Circuit, "it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members ." Id. at 861. Resolution of the common questions related to whether Defendants had a policy or practice of requiring non-salaried employees to work off-the-clock and of requiring tipped employees to participate in tip pooling and sharing will answer the more difficult threshold liability issue and will clearly advance the litigation. Thus, in light of Comcast and In re Whirlpool Corp.,

8

the Court finds that bifurcating the issues of liability and damages at trial will remedy any problems surrounding individualized proof of damages. Once the common liability questions are resolved, the Court will "either enter judgment for [Defendants] or proceed to the question of [Plaintiffs'] damages." Id. at 861.

Finally, the evidence in the present case demonstrates that class certification is the "superior method to adjudicate this case fairly and efficiently." See In re Whirlpool Corp., 722 F.3d at 861 (citing Amgen, 133 S.Ct. at 1191; Olden v. LaFarge Corp., 383 F.3d 495, 507–10 (6th Cir. 2004)). Just as in In re Whirlpool Corp., "[u]se of the class method is warranted particularly because class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery." 722 F.3d at 861 (citing Amgen, 133 S.Ct. at 1202; Amchem Products., Inc. v. Windsor, 521 U.S. 591, 617 (1997); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir.2004) (noting that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).) As the Sixth Circuit noted in In re Whirlpool Corp., any class member who wishes to control his or her own litigation may opt out of the class under Rule 23(c)(2)(B)(v). Id. at 861.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by the Defendants pursuant to Federal Rules of Civil Procedure 7(b) and 23(c)(1)(C) to reconsider the class certification decision [DN 119] is **DENIED**. Having reviewed the arguments of counsel and the Supreme Court's decision in Comcast and the Sixth Circuit's decision in In re Whirlpool Corp., the Court finds that bifurcating the issues of liability and damages at trial will remedy any problems surrounding individualized proof of damages.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

October 16, 2013

cc: counsel of record

9