# Exhibit A

## (Class Claims Settlement Agreement and Release)

## CLASS CLAIMS SETTLEMENT AGREEMENT AND RELEASE

This Class Claims Settlement Agreement and General Release ("Settlement Agreement") is entered as of _____, by and among Plaintiffs William Whitlock, David Skyrm, Kristin Moore, Holly Goodman, Gary Muncy, and Michael Brown ("Plaintiffs"), individually and on behalf of others similarly situated, and all Defendants in the action entitled *William Whitlock et al. v. FSL Management, Inc., et al.*, which is pending in the U.S. District Court for the Western District of Kentucky as Civ. Action No. 3:10-cv-00562-JHM-DW. Plaintiffs and Defendants also may be referred to herein individually as a "Party" and collectively as the "Parties."

This Class Claims Settlement Agreement concerns the claims of the two plaintiff classes certified by the district court in the *Whitlock* action. The defamation claims of class members William Whitlock and Kristin Moore are addressed in a separate settlement agreement ("Defamation Claims Settlement Agreement"). Although that Defamation Claims Settlement Agreement does not require approval by the Court, the parties have made the Court's final approval of this Class Claims Settlement Agreement a condition of the Defamation Claims Settlement Agreement.

### 1.    Case Description.

The following pending action is covered by the settlement memorialized in this Settlement Agreement: the action entitled *William Whitlock et al. v. FSL Management, Inc., et al.*, Civ. Action No. 3:10-cv-00562-JHM-DW (W.D. Ky.) (the "Lawsuit").

Plaintiffs' counsel, Michele Henry and James Craig of Craig Henry PLC and Alton D. Priddy of Priddy, Cutler, Naake & Meade PLLC diligently pursued an investigation of Plaintiffs' claims against Defendants, including any and all applicable defenses and the applicable law. The investigation included, *inter alia,* the exchange of information, the production of documents, depositions, and numerous conferences between the Parties' respective counsel.

This Settlement Agreement was reached after extensive arm's length negotiations and was negotiated in light of all known facts and circumstances, including the mutual risks of significant delay, costs, and uncertainty associated with litigation; various defenses asserted by Defendants; and numerous potential appellate issues. With the assistance of a formal private mediation under the auspices of an experienced mediator, the Parties have agreed to this Settlement Agreement to wholly and finally resolve the Lawsuit and the claims asserted within the Lawsuit and any and all claims related to their employment with Defendants.

### 2.    Defendants' Non-Admissions Clause.

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Lawsuit and further deny that, for purposes other than the settling of the Lawsuit, any part of the Lawsuit is appropriate for class certification. The Lawsuit, the negotiation and execution of the Settlement Agreement, and all acts performed or documents executed pursuant to or in furtherance of the Settlement Agreement (i) shall not be used as an admission or evidence of wrongdoing on behalf of Defendants; (ii) shall not be an admission or evidence of

fault on behalf of Defendants in any action before a civil, criminal, or administrative agency; and (iii) shall not be deemed to be, and may not be used as, an admission or evidence of the appropriateness of these or similar claims for class certification in the Lawsuit or with respect to any other proceeding.

### 3.  Settlement Class Definitions.

For purposes of this Settlement Agreement, there will be two subclasses. The first class, referred to in this Settlement Agreement as the "Off-The-Clock Class," consists of:

> All non-salaried bartenders, servers, "beer tub girls," "shot girls," and security personnel employed by FSL Management, LLC, and FSH Management, LLC, between January 30, 2007 and January 1, 2010.

The Second class, referred to in this Settlement Agreement as the "Tip Pool Class," consists of:

> All tipped bartenders, servers, "beer tub girls," "shot girls" employed by FSL Management, LLC, and FSH Management, LLC between January 30, 2007, through January 1, 2010.

These Classes do not include individuals employed by Defendants as bar backs, cooks, hosts, kitchen staff, or in coat check, sales, and management roles. They also do not include a member who files a timely request for exclusion, as detailed below. Individuals who do not request exclusion will be "Class Members."

### 4.  Appropriateness of Settlement Class.

For purposes of this Settlement Agreement (and steps taken toward effecting this Settlement Agreement) only, the Parties conditionally stipulate that the requisites for pursuing the class-wide and/or representative claims alleged in this Lawsuit have been met. Defendants do not otherwise concede that class certification was appropriate, and reserve the right to challenge the District Court's class certification order on appeal (or cross-appeal) should this Settlement not become effective for any reason.

Plaintiffs' counsel believe that the settlement with Defendants for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and that it is in the best interest of Class Members' claims in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendants, and numerous potential appellate issues.

### 5.  Court Approval as Condition to the Settlement.

Plaintiffs, on behalf of themselves and Class Members, along with Defendants, and subject to the approval of the Court, stipulate that the Lawsuit will be compromised, settled, and dismissed pursuant to the terms and conditions set forth in this Settlement Agreement and that, after the Court's final approval of this settlement, judgment shall be entered, subject to the continuing jurisdiction of the Court as set forth below and subject to the definitions, terms, and

conditions within this Settlement Agreement, which by this reference become an integral part of this Settlement Agreement.

6.    **Appointment of Class Counsel.**

In its August 10, 2012 class certification order, the district court appointed Michele Henry (now of Craig Henry PLC) and Alton D. Priddy of Priddy Cutler Naake & Meade PLLC to serve as class counsel ("Class Counsel") pursuant to Federal Rule of Civil Procedure 23(g).

7.    **Settlement Payments.**

Defendants shall pay One Million Forty Thousand Dollars and Zero Cents ($1,040,000.00) (hereinafter "Gross Settlement Payment") in consideration for the releases, covenants, and promises set forth in this Settlement Agreement in full settlement of all claims set forth in the Lawsuit. This Gross Settlement Payment shall represent the maximum possible monetary amount that Defendants shall make toward the settlement of this action. The Gross Settlement Payment shall be a fixed common-fund settlement, and no portion shall revert to Defendants unless this Settlement Agreement is not finally approved by the Court or Defendants elect to rescind this Agreement pursuant to Paragraph 11.D. Said payment shall be made at the times and in the manner set forth in Section 16 herein, and said payment shall be distributed among participating Class Members, the Claims Administrator (defined below), and Class Counsel as set forth in this section.

As discussed below, the Gross Settlement Payment shall be used to satisfy (i) attorneys' fees and costs; (ii) claims-administration fees, including the reasonable fees charged by the Claims Administrator to cover any costs associated with the required tax reporting on any individual settlement payments, and the issuing of any and all 1099 and W-2 IRS Forms; and (iii) payment to Class Members. The Gross Settlement Payment shall be used to satisfy any and all payments (and associated costs) required by the Settlement Agreement.

A.    Attorneys' Fees and Costs.

As part of the overall settlement and release of claims, and subject to approval by the Court, Defendants agree that the amount of attorneys' fees to be allocated from the Gross Settlement Payment to Class Counsel shall be determined by the Court. Class Counsel will also request that the Court reimburse Class Counsel for actual and reasonable costs and expenses incurred in bringing and maintaining the Lawsuit, which likewise shall be reimbursed from the Gross Settlement Payment.

Defendants will not object to Class Counsel's request for attorneys' fees not to exceed twenty-five percent (25 %) of the total Gross Settlement Payment. Defendants will not object to Class Counsel's request for reimbursement of costs and expenses in an amount not to exceed $25,000 to be paid from the Gross Settlement Payment. Class Counsel will file their request for attorneys' fees and costs to be paid from the Gross Settlement Payment on or before the date that Class Notice is mailed out by the Claims Administrator. The final amount of any class counsel fees and expenses will be set forth in any final Class Claims Settlement Agreement approved by the Court. The Claims Administrator—not Defendants—shall issue an IRS Form 1099 to Class Counsel reflecting the awarded attorneys' fees and costs.

Except as set forth herein, Plaintiffs, Class Members, and Defendants shall bear their own attorneys' fees and costs. Except as herein expressly provided regarding payment to the Claims Administrator, Class Counsel assume full responsibility for payment of all costs of any sort whatsoever, including witness and expert fees, incurred by Plaintiffs or by any of Plaintiffs' counsel of record related to this matter.

B.     <u>Claims-Administration Fees.</u>

Subject to approval by the Court, the reasonable fees charged by the Claims Administrator shall be paid from the Gross Settlement Payment after final approval and funding of the settlement. These reasonable fees shall include any costs associated with the required tax reporting on any individual settlement payments, and the issuing of any and all 1099 and W-2 IRS Forms.

C.     <u>Payment to Settlement Classes.</u>

After deducting from the Gross Settlement Payment (i) Class Counsel's attorneys' fees and costs as awarded by the Court and (ii) the fees and costs associated with claims administration, the remainder ("Net Settlement Fund" or "NSF") shall be distributed to Class Members who do not timely opt out of the settlement in the following manner:

1.     Each member of the Tip Pool Class is entitled to receive a "Tip Pool Share" in an amount equal to (1) the number of hours they worked as a bartender, server, shot girl, or beer tub girl, multiplied by (2) the relevant "Tip Credit" in effect at the time those hours were worked. For purposes of calculating the Tip Pool Share, each Tip Pool Class Member's Tip Credit shall be calculated by subtracting the cash wage that Defendants paid to the individual Tip Pool Class Members at the relevant time from the minimum wage that Defendants would have been required to pay to Tip Pool Class Members under KRS 337.275(1), if those Tip Pool Class Members had not been employed in an occupation where they customarily received tips from patrons or others. If any Tip Pool Class Member was paid at or above the minimum wage required by KRS 337.275(1) at the relevant time, their Tip Credit shall equal zero, and they will not receive any Tip Pool Share for such hours. For purposes of calculating the Tip Pool Share, the Claim Administrator will use payroll data provided to it by Defendants.

2.     Each member of the Off-The-Clock Class is entitled to receive an "Off-The-Clock Share" in an amount equal to the Class Member's "Off-The-Clock Factor" times the highest minimum wage specified by KRS 337.275(1) during the employee's period of employment with Defendants. For those employed as security personnel, who often earned more than minimum wage, the Off-the-Clock Share shall be equal to the employee's Off-the-Clock-Factor times the highest regular hourly wage received while working as security personnel. For purposes of calculating the Off-The-Clock Share, each class member's Off-The-Clock Factor shall be equal to five (5) hours for each week during which the employee worked at least one shift for the Defendants. For purposes of calculating the Off-The-Clock Share, the Claim Administrator will use payroll data provided to it by Defendants.

3.     It is anticipated that some Class Members might allege they worked for Defendants even though Defendants' payroll systems contain no record of such work. For purposes of this Class Claims Settlement Agreement, these Class Members are referred to as "No Records Class Members" and will be eligible to make claims against a "No Records Employees Fund" ("NREF"). The NREF will be funded out of the Net Settlement Fund and will be capped at $25,000.

In order to participate in the NREF, such Class Members who do not appear on Defendants' payroll records will be required to complete a special form, to be provided by the Claims Administrator, on which the Class Member must attest under penalty of perjury to the dates of their employment with Defendants and the job category (or categories) in which they worked. For the purposes of calculating these employees' Off-the-Clock Share (for all such employees) and Tip Pool Share (for those who worked as bartenders, servers, "beer tub girls," and "shot girls"), the Claims Administrator shall apply the formulas set forth in sections 7.C.1 and 7.C.2 above, using the number of hours and weeks attested to by the No Records Class Member under penalty of perjury.

If the total claims against the NREF exceed $25,000, each No Records Class Member will receive only a *pro rata* portion of the NREF. Conversely, if the total claims against the NREF are less than $25,000, each No Records Class Member will receive full payment for their Tip Pool Share and/or Off-the-Clock Share out of the NREF and any remaining funds in the NREF will be returned to the Net Settlement Fund prior to the calculation of any supplemental *pro rata* distributions to Class Members set forth in Paragraph 7.C.5, *infra*.

4.     The Claims Administrator shall add each Class Member's Tip Pool Share and Off-The-Clock Share together to determine each person's "Class Member Settlement Share." The Claims Administrator shall then add all of the Class Member Settlement Shares together to determine the "Total Settlement Shares."

5.     If the sum of the Total Settlement Shares is **less than or equal to** the Net Settlement Fund (less any amounts paid out to settle claims against the No Records Employee Fund, described in Paragraph 7.C.3, *supra*), each Class Member will be entitled to receive the full amount of their Class Member Settlement Share. In addition, any money that remains in the Net Settlement Fund after allocating all of the Class Member Settlement Shares, including any amounts in the NREF returned to the Net Settlement Fund, shall be allocated among all Class Members, including No Records Class Members (described in Paragraph 7.C.3, *supra*) on a *pro rata* basis, to be determined by the Claim Administrator based on each Class Member's percentage of the Total Settlement Shares.

6.     If the sum of the Total Settlement Shares is **more than** the Net Settlement Fund (less any amounts paid out to settle claims against the NREF), each Class Member (excluding No Record Class Members) will be entitled to receive their *pro rata* share of the Net Settlement Fund (less any amounts paid out to settle claims against the NREF), to be determined by the Claim Administrator based on each Class Member's percentage of the Total Settlement Shares.

For each class member, fifty percent (50%) of the portion of the NSF they receive will be characterized as wages, and the remaining fifty percent (50%) will be characterized as liquidated damages payable under KRS 337.385. Defendants will be responsible for paying the employer's side of (1) FICA and (2) state and federal unemployment taxes, on the amounts characterized as wages, but not the amounts characterized as liquidated damages.

D.    No Warranty by Defendants.

Plaintiffs understand and agree that Defendants are not providing Plaintiffs or Class Members with tax or legal advice and that Defendants make no representations regarding tax obligations or consequences, if any, related to this Settlement Agreement.

**8.    Claims Administration.**

Subject to approval of the Court, the Parties will select a neutral third-party claims administrator ("Claims Administrator") to perform all acts related to providing the Class Notice to the Settlement Class; calculating and distributing settlement funds as payments to Class Members who do not opt out, attorneys' fees, and third-party administration fees and costs to itself; processing all necessary 1099 and W-2 IRS Forms; and otherwise ensuring the terms of the Settlement Agreement are achieved.    The Parties propose the following as Claims Administrator: Analytics LLC

**9.    Seeking Preliminary Approval from the Court.**

The settlement of this Lawsuit is conditioned upon the Court's providing both preliminary and final approval of the settlement terms. On or before **[DATE]**, Class Counsel shall file an agreed upon motion with the Court for preliminary approval of this Settlement Agreement. Defendants shall support the request for preliminary approval. Defendants shall file a statement of non-opposition with respect to Plaintiffs' motion for preliminary approval of this Settlement Agreement. The submission for preliminary court approval will include the proposed, agreed-upon forms of the Class Notice and all other necessary documents.

**10.    Information to the Claims Administrator.**

Not later than 15 days after receipt of notice of the Court's entry of an order of preliminary approval, Defendants shall provide to the Claims Administrator a database that contains the last-known name, mailing address (including email, if available), and social security number for all members of the Settlement Class ("Confidential Information for the Claims Administrator").    For purpose of calculating the settlement payments described in section 7, Defendants also shall provide the Claims Administrator a database showing (1) the number of hours that each Class Member who worked in a tipped position worked during the Tip Pool Class period; (2) the hourly wage paid to such employees; and (3) the number of weeks that each Off-The-Clock class member worked at least one shift for Defendants during the Off-The-Clock class period.    Defendants shall cooperate and provide any additional information the Claims Administrator may reasonably request for the purpose of providing the Class Notice to Class Members, allocating and distributing the settlement amounts, and otherwise administering this Settlement Agreement.

Defendants will provide the above information to the Claims Administrator confidentially, solely to aid the Claims Administrator in its execution of its responsibilities as Claims Administrator. In exchange, the Claims Administrator must agree to use the Confidential Information for the Claims Administrator solely for the purposes of performing its third-party administrator duties of providing the Class Notice to the Settlement Class and thereafter executing the Settlement Agreement's terms. The Claims Administrator must agree to maintain in the strictest of confidence all Confidential Information for the Claims Administrator and not to disclose this information in any manner whatsoever, in whole or in part, except as specifically provided herein. The Claims Administrator acknowledges and understands that the Confidential Information for the Claims Administrator shall not be disclosed or released to Plaintiff or Class Members in the Lawsuit or their counsel under any circumstance without the express written consent of counsel for Defendant. The Claims Administrator shall destroy all Confidential Information for the Claims Administrator received in connection with processing and effecting this Settlement Agreement after retaining such information for 60 days after issuing the final settlement payment.

## 11.    **Class Notice and Requests for Exclusion.**

A.    Notice to the Class and Requests for Exclusion.

Not later than 30 days after receipt of the information described in section 10, the Claims Administrator shall provide a copy of the Notice of Pendency of Class Action, Proposed Settlement, and Hearing Date for Court Approval ("Class Notice") to the Settlement Class. Such Class Notice shall include an explanation of the procedure for requesting exclusion from the Settlement Class. All such forms shall be attached to Plaintiffs' motion for preliminary approval of this Settlement Agreement and shall first be approved by the Court. The Claims Administrator shall run the names and addresses of members of the Settlement Class through the National Change of Address database.

The Settlement Class shall have 45 days from the date the Class Notices are mailed to postmark requests for exclusion (such requests for exclusion are also referred to as "Opt Outs"). In order to validly request exclusion, the Opt-out must be completed in its entirety in accordance with all instructions set forth in the Class Notice.

The Claims Administrator will perform one address follow-up on returned mail and will re-mail the Class Notice to an updated address (if any) within 15 days of receipt of the returned mail. (The 45-day time limit will run from the date of the second mailing for those Class Members. To the extent a Class Notice from the initial mailing is not returned within 45 days, it shall be deemed to have been sent to a valid address even if it is thereafter returned.) It is the intent of the Parties that reasonable, but not extraordinary, efforts be used to locate members of the Settlement Class. If the initial Class Notice is returned, the Claims Administrator will search using the social security number of the Settlement Class member for a more current address. If no address is found within 10 days, no further action is required.

All Class Members who have not requested exclusion will receive a payment of the NSF as set forth in sections 11(E) and 16 herein. If any Settlement Class member submits a defective Opt Out that has been postmarked before the 45-day response deadline, the Claims

Administrator shall send a cure letter to such individual, advising that the form is defective, stating the nature of the defect, and advising that the, defect must be cured to render the Opt Out valid. The cure letter shall state that the individual has 10 days from the date of the cure letter or the response deadline, whichever date is later, to postmark a revised Opt Out. Defective requests for exclusion will be considered invalid and, if received after the response deadline, Settlement Class members shall have no right to cure them.

Any Settlement Class member who does not affirmatively opt out of the Settlement Agreement by submitting a timely and complete request for exclusion shall be bound by all of its terms, including those pertaining to the released claims, as well as any final judgment that may be entered by the Court, if the Court grants final approval of the Settlement Agreement.

### B. Claims Administration.

Settlement Class members shall mail all Opt Outs directly to the Claims Administrator at the address indicated by the Class Notice. If an Opt Out is sent to any Party or its or their counsel, that Party or its or their counsel shall forward the document to the Claims Administrator, and it shall be deemed mailed on the date of the original postmark.

If there is any dispute as to the information provided on the Opt Out, the Claims Administrator shall be solely responsible for resolving any such disputes. The Claims Administrator's ruling will be binding on the Settlement Class member and on Defendant, and it will not be appealable.

### C. Reports.

Within 10 days of the conclusion of the 45-day period noted above (extended, if necessary, by the time periods also noted above), the Claims Administrator will provide a written report to both Parties' counsel noting the number of Class Notices sent, the number that were returned as undeliverable (after the follow-up required herein), and the number of valid Opt Outs received. Prior to the due date for this report, the Claims Administrator will reasonably respond to requests from counsel for a report on the current status of the claims-administration process.

### D. Revocation of Settlement Agreement.

If five percent (5%) or more of all Class Members submit valid Opt Outs by the 45-day response deadline, then Defendants may, at their election, rescind the Settlement Agreement, and all actions taken in furtherance of the Settlement Agreement will be null and void. Defendants must exercise this right of rescission, in writing, to Class Counsel, within fourteen (14) calendar days after the Claims Administrator notifies the Parties of the total number of Opt Outs received by the 45-day response deadline.

### E. Payments.

The Claims Administrator shall be responsible for making all payments to any person or entity from the Gross Settlement Payment; for taking care of all required tax deductions,

withholding, and reporting; and for communicating the information regarding status of the payments to the Parties' counsel.

Pursuant to Section 16 below, the Claims Administrator shall issue settlement checks to all Class Members who have not opted out reflecting each respective Class Member's share of the NSF.

The Parties agree that all settlement checks mailed to Class Members will be voided if not negotiated within 180 days of the date of their mailing to the Class Member. All checks not negotiated within such time, and any other residual from the Gross Settlement Payment, shall be paid into the Residual Net Settlement Fund ("RNSF"). The balance in the RNSF shall be distributed to Home of the Innocents as the cy pres recipient.

12.  **Objections.**

All objections to the settlement must be served and filed with the Court at least 16 court days before the date set for hearing the motion for final approval of the Settlement Agreement. All objections must be served on both Parties' counsel and filed with the Court, along with a notice of intention to appear. Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement, unless otherwise ordered by the Court. Only Class Members who do not opt out may file objections. The Parties' counsel may file, at least 5 court days before the final approval hearing (or some other date as set by the Court), responses to any written objections filed with the Court.

13.  **Releases.**

Upon final approval by the Court, Plaintiffs and each Class Member release Defendants FSL Management, LLC, Cordish Operating Ventures, LLC, Entertainment Consulting Services, LLC , n/k/a Entertainment Consulting International, LLC, and FSH Management, LLC. and each of Defendants' respective officers, directors, shareholders, investors, employees, agents, direct and indirect subsidiaries or affiliated corporations, organizations, representatives, insurers, predecessors, successors, assigns, clients (and their respective officers, directors, employees, agents, managers, and fiduciaries), and counsel (collectively referred to as the "Released Parties") from any and all state and federal employment and wage-and-hour claims of every nature or description that relate to or arise from the facts alleged in the operative Complaint up to and including the date of the preliminary approval of this Settlement Agreement. These released claims include but are not limited to (i) the alleged forced participation in a tip pool in violation of KRS 337.065; (ii) the alleged failure to pay employees minimum wage for all hours worked, in violation of KRS 337.275; and (iii) the alleged violations of KRS 337.055 and KRS 337.060.

This release covers all claims for interest, attorneys' fees, and costs related to the Lawsuit. Class Members who have not opted out of the agreement shall be bound by the release provisions of this Agreement, even if they do not share in the distribution of any part of the Gross Settlement Payment.

14.   **Stay of Proceedings.**

The Parties agree to refrain from further litigation of this matter, except such proceedings necessary to implement and obtain an order granting final approval of the terms of the Settlement Agreement, or to enforce Section 18 of this Agreement. The Parties further agree that the mutual, voluntary cessation of litigation shall terminate if the motion for final approval of the Settlement Agreement is denied by the Court.

15.   **Effective Date.**

The effective date of this Settlement Agreement ("Effective Date") is the date upon which (a) the Settlement Agreement is finally approved substantially in accordance with the terms of this Settlement Agreement and (b) the Court's entry of judgment and dismissal of the Lawsuit substantially in accordance with the terms of this Settlement Agreement ("Judgment") become final. For purposes of defining the Effective Date, the date upon which the Settlement and Judgment (as described above) become final is the last date of (a) final approval by the Court if there are no objections made and no further objections can be made; (b) if there are objections to the Settlement Agreement that are not withdrawn, and if no appeal, review, or writ is sought from the Judgment, the day after the period for appeal has expired; or (c) if an appeal, review, or writ is sought from the Judgment, the day after the Judgment is affirmed or the appeal, review, or writ is dismissed or denied.

16.   **Settlement Funding and Payout Deadlines.**

The Gross Settlement Payment shall be funded as set forth in this section.

A.   Initial Deposit ($25,000).

Upon execution by Plaintiff of this Settlement Agreement, Defendants shall deposit $25,000 to the client trust account of its attorneys. Within 5 business days upon entry of preliminary approval of this Settlement Agreement by the Court, Defendants' attorneys shall deposit the initial $25,000 in an escrow account established and maintained by the Claims Administrator. The Parties intend that these funds be used by the Claims Administrator to provide Class Notice.

B.   Structured Settlement.

1.   On or before _____, Defendants shall deposit an additional one million fifteen thousand dollars ($1,015,000) with the Settlement Administrator, for a total of $1,040,000.

2.   Within 14 business days of the Effective Date, the Claims Administrator shall calculate each Class Member's individual distribution from the Net Settlement Fund, excluding any tax deductions and withholdings. The Claims Administrator will provide to Defendants copies of all IRS W-2 forms and 1099-MISC prior to the deadline of submitting forms to the appropriate agencies. Within 21 business days of the effective date, the Claims Administrator shall distribute the Net Settlement Fund to Settlement Class Members.

3.   The individual pro-rata distribution to Class Members from the Net Settlement Fund contemplated in the immediately preceding paragraph shall be allocated as follows: one-half (50%) shall be allocated to unpaid wages for which IRS Forms W-2 will issue and from which employment taxes and withholdings shall have been deducted, and one-half (50%) shall be allocated as liquidated damages for which IRS Forms 1099 MISC will issue. The Claims Administrator, on behalf of the Net Settlement Fund, shall issue each Class Member an IRS Form W-2 for all amounts designated as wages, as well as a Form 1099 MISC for all amounts designated as liquidated damages as required.

4.   Checks issued to Class Members pursuant to this Settlement Agreement shall remain negotiable for a period of one-hundred and eighty (180) days from the date of mailing. Class Members who fail to negotiate (i.e., cash or deposit) their check(s) within the negotiable period shall remain subject to the terms of this Settlement Agreement and the Final Judgment and the Release of Claims. After the expiration of one-hundred and eighty (180) days, the sum of any uncashed/undeposited checks shall revert to the Residual Net Settlement Fund.

5.   The Gross Settlement Amount shall not revert back to Defendants unless (1) Defendants elect to rescind this Agreement pursuant to Paragraph 11.D, *supra*, if a sufficient number of class members opt out, or (2) if this Settlement Agreement is not finally approved. In either case, 100% of the Gross Settlement Amount will be returned to Defendants, less such reasonable costs as may have been incurred by the Claims Administrator. In the event of a dispute regarding whether the charges of the Claims Administrator are reasonable, such dispute will be resolved by the Magistrate Judge, without further appeal.

6.   Plaintiffs and the Class Members also acknowledge that none of the of the amounts paid under this Settlement Agreement constitute compensation under any "Employee Benefit Plan" as defined by section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"); they waive any and all claims for additional contributions to and/or benefits under any Employee Benefit Plan maintained or sponsored by Defendants based on any amount paid under this Settlement Agreement; and they release any claim for employee benefits, including any claim arising under ERISA arising out of, or related to, the amounts paid under this Settlement Agreement.

7.   The Parties agree that, after final approval of the Settlement Agreement, Plaintiffs shall file a request for dismissal without prejudice and request that the Court retain jurisdiction in the event that there are disputes over the settlement payments. Plaintiffs will file a request for dismissal with prejudice upon Defendants' completion of the payment described in Section 16.B.1.

17.   **Communications with Class Members.**

Under no circumstances will any counsel or Plaintiffs encourage a Class Member to request exclusion.

18.     **Communications with Non-Class Members.**

The Parties and their respective attorneys agree that no party or attorney will publicly give an opinion about, or disparage or cast in a negative public light: (1) the Parties to this litigation; (2) the merit to the allegations in the underlying lawsuit; (3) the terms of the Settlement Agreement; or (4) the negotiations leading up to the Agreement. This prohibition shall apply to all forms of media, including social media (e.g., Facebook, Twitter). The parties' counsel will jointly craft an instruction to class members, to be included by the claims administrator with each class member's settlement check, explaining the parties' agreement not to give an opinion on the above topics. Any breach of this provision by an individual class member will be deemed a breach and subject that class member to remedies to be determined by a court of competent jurisdiction, but will not be considered a breach that invalidates the agreement for the entire class.

19.     **Failure of the Settlement Due to Non-Approval of the Court.**

In the event of non-approval by the Court (or by any reviewing court) of this Settlement Agreement, the Settlement Agreement shall be deemed voided, and no party or counsel shall be entitled to the payment amounts contemplated herein. Moreover, in the event of non-approval by the Court, no party (or other witness) may use the fact that the Parties agreed to settle the case, the settlement documents, or any communications regarding the Settlement Agreement as evidence of Defendants' liability or lack thereof or as proof of the suitability of the case for class certification or representative treatment.

20.     **Tax Issues.**

This Settlement Agreement does not constitute tax advice to any recipient of monies. Settlement Class members will be advised to seek individual tax advice in the Class Notice. Defendants will not be held responsible for individual tax liability, if any, found to exist on behalf of Class Members. Except as set forth in Section 7.C above, any tax withholdings, deductions, or obligations arising out of the distribution of the Gross Settlement Payment to Plaintiff and Class Members shall be funded exclusively by the Gross Settlement Payment.

21.     **Future Cooperation.**

The Parties and their respective counsel of record shall proceed diligently to prepare and execute all documents, to seek the necessary court approvals, and to do all other things reasonably necessary to conclude the settlement and dismiss the Lawsuit in accordance with this Settlement Agreement. The Parties agree to cooperate fully to achieve final approval of the Settlement Agreement substantially in accordance with the terms outlined herein.

22.     **Construction and Interaction.**

This Class Claims Settlement Agreement, including any Exhibits thereto, constitutes the entire agreement among the Parties with respect to the matters described in this Class Claims Settlement Agreement. No representations, warranties, or inducements have been made to any Party concerning the subject matter of this Agreement other than the representations, warranties, and covenants contained herein. This Class Claims Settlement Agreement shall each be

construed according to its fair meaning and intent. Each Party represents that his, her, or its counsel have participated and cooperated in the drafting and preparation of this Class Claims Settlement Agreement; hence, in any construction to be made of this Class Claims Settlement Agreement, the same shall not be construed against any Party on the basis that said Party was the drafter. The Parties recognize the existence of the separate Defamation Claims Settlement Agreement, which should be enforced according to its terms.

## 22.   Governing Law.

Kentucky Law governs the interpretation and application of this Class Claims Settlement Agreement and the administration of any claims.

## 23.   Counterparts.

This Settlement Agreement may be executed in one or more faxed or e-mailed counterparts, which counterparts may be filed with the Court. All executed counterparts, and each of them, shall be deemed to be one and the same instrument.

## 24.   Parties' Authority.

The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties to the terms and conditions hereof.

## 25.   Continuing Jurisdiction.

Except as otherwise specifically provided for herein, the Western District of Kentucky shall retain jurisdiction to enforce this Settlement Agreement; to supervise all notices, the administration of the Settlement Agreement, and the distribution of the Gross Settlement Payment; and to hear and adjudicate any dispute arising from or related to the Settlement Agreement.

## 26.   Class Signatures.

It is agreed that, because the Settlement Class is so numerous, it would impossible or impractical to have each Class Member execute this Agreement. Plaintiffs execute this Agreement on behalf of all Class Members. The Class Notice shall advise all members of the Settlement Class of the binding nature of the release, and such shall have the same force and effect as if this Settlement Agreement were executed by each Class Member.

## 27.   Representations Regarding Other Matters.

Class Counsel represent that they know of no other wage and hour claims or attempted wage and hour claims against Defendants or any related party.

## 28.   Sole and Entire Class-wide Agreement.

This Settlement Agreement sets forth the entire agreement between the Parties with respect to class-wide issues, and it fully supersedes any and all prior agreements or

understandings between the Parties pertaining to the subject matter of this Settlement Agreement. No prior or other oral or written understanding shall be of any force or effect with respect to the class-wide matters covered by this Settlement Agreement.

This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

## 30.   **Section Headings.**

Section headings in this Settlement Agreement are included herein for convenience of reference only and shall not constitute a part of this Settlement Agreement for any other purpose.

**REVIEWED AND ACCEPTED:**

**William Whitlock**

Subscribed and sworn to me this 16
day of ⎯⎯ July ⎯⎯, 2015

**NOTARY PUBLIC**
My Commission Expires: 2 2 16

David Skyrm

Subscribed and sworn to me this \_\_18\_\_
day of \_\_\_July\_\_\_\_ , 2015

NOTARY PUBLIC
My Commission Expires: 2/2/16

Kristin Moore

Subscribed and sworn to me this 14
day of July , 201 5

NOTARY PUBLIC
My Commission Expires: 2/2/16

Holly Goodman

_Holly Goodman_

Subscribed and sworn to me this 20th
day of July , 201 5

_Melanie Ulmy_
NOTARY PUBLIC
My Commission Expires: 2/2/16

Gary Muncy

Subscribed and sworn to me this _____
day of _7 - 16_____, 2015

_____
NOTARY PUBLIC
My Commission Expires: _2/2/16_

Michael Brown

Subscribed and sworn to me this _18_
day of ___July___ , 201_

_____
NOTARY PUBLIC
My Commission Expires: _2/2/16_

FSL Management, LLC


_____

Its_____


Subscribed and sworn to me this _____
day of _____, 201_


_____

**NOTARY PUBLIC**
**My Commission Expires:** _____

Cordish Operating Ventures, LLC

_____

Its_____

Subscribed and sworn to me this _____
day of _____, 201_

_____
NOTARY PUBLIC
My Commission Expires: _____

Entertainment Consulting International,
LLC f/k/a Entertainment Consulting
Services, LLC

_____

Its_____

Subscribed and sworn to me this _____
day of _____, 201_

_____

NOTARY PUBLIC
My Commission Expires: _____

FSH Management, LLC

_____

Its_____

Subscribed and sworn to me this _____
day of _____, 201_

_____
NOTARY PUBLIC
My Commission Expires: _____

7380461v5