UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:10CV-00562-JHM

WILLIAM WHITLOCK, et al.                                    PLAINTIFFS

VS.

FSL MANAGEMENT, LLC, et al.                                 DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants to decertify the class [DN 184]. This matter is also before the Court on final approval of the settlement agreement and a motion by Plaintiffs for attorneys' fees [DN 181]. A hearing on the motion to decertify the class was conducted on December 10, 2015, in conjunction with the fairness hearing. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

Plaintiffs, William Whitlock, David Skyrm, Michael Brown, Holly Goodman, Kristin Moore, and Gary Muncy, brought an action against Defendants, FSL Management, LLC, FSH Management, LLC, Entertainment Concepts Investors, LLC, and Cordish Operating Ventures, LLC ("Cordish") alleging wage and hour violations. The named Plaintiffs are former employees of three nightclubs that operate in Louisville, Kentucky: Tengo sed Cantina, Angel's Rock Bar, and Hotel. The clubs are located in "Fourth Street Live," a one block entertainment district located in downtown Louisville. Tengo sed Cantina and Angel's Rock Bar are organized under the name FSL Management, LLC ("FSL"). Hotel is organized under the name FSH Management, LLC ("FSH"). The nightclubs employ a variety of individuals including servers (shot girls and beer tub girls), bartenders, security personnel, and barbacks.

Plaintiffs assert claims for unpaid wages under KRS Chapter 337.  Plaintiffs allege that Defendants acted in violation of KRS § 337.275 by requiring them to work off-the-clock without payment of an hourly wage which included time engaged in promotional activities, set up, clean up, and employee meetings.  Plaintiffs further allege that Defendants violated KRS § 337.065 by requiring employees to participate in pooling and sharing of tips with other employees at a rate set by Defendants.

By Memorandum Opinion and Order dated August 10, 2012, the Court granted Plaintiffs' motion for class certification of the wage and hour claims pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  The Court certified (1) a class for all non-salaried employees of FSL Management, LLC, and FSH Management, LLC, who worked without receiving hourly wages from January 30, 2007, through January 1, 2010, and (2) a subclass for all tipped employees of FSL Management, LLC, and FSH Management, LLC, who were required to pay a portion of their tips to other employees and were required to participate in a mandatory tip pool from January 30, 2007, through January 1, 2010.  Defendants sought review of this decision through a petition for an interlocutory appeal to the Sixth Circuit.  The Sixth Circuit denied the petition on January 31, 2013.

In April of 2013, Defendants moved the Court to reconsider its prior Order certifying the two plaintiff classes in light of a recent United States Supreme Court case, Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013), and the United States Supreme Court's subsequent order vacating and remanding two other cases, In re: Whirlpool Corp. Front-Loading Washer Product Liability Lit, 678 F.3d 409 (6th Cir. 2012) and Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012).  After reviewing the Supreme Court's decision in Comcast and the Sixth Circuit's decision in In re Whirlpool Corp., the Court denied the motion to reconsider the class

2

certification.

In May 2014, the parties mediated the dispute and agreed to the financial component of the settlement. After almost another year of negotiations, the parties agreed to the non-monetary terms of the settlement and the proposed distribution of payments to the class members. The parties exchanged emails regarding the revised settlement agreement and class notice, culminating in an agreement via emails sent by the parties on March 19 and March 20, 2015. On March 20, 2015, the parties filed a joint status report informing the Court that they had "agreed to the terms of a settlement agreement and anticipate filing the formal settlement documents in this matter as well as all necessary pleadings to bring the case to conclusion by April 17, 2015." [DN 160]

On Friday, March 27, 2015, former Defense Counsel Michael Abate sent Plaintiff Counsel Michele Henry an email informing her about "a new case that could affect the Court's ability to approve [the settlement]." (March 27, 2015, Email from Abate to Henry.) The new case referenced in Defendants' email was a February 27, 2015 decision by the Kentucky Court of Appeals, McCann v. Sullivan University Systems, Inc., 2015 WL 832280 (Ky. App. Feb. 27, 2015). In McCann, a former Sullivan University admissions officer brought a class action for wage and hour violations under Kentucky law. The Jefferson Circuit Court held that McCann could not bring a wage and hour class action under KRS § 337.385. The Kentucky Court of Appeals affirmed the dismissal of the class claims. The Court observed that "the language of KRS 337.385 states that actions for violations of Kentucky's wage and hour laws may only be maintained by one or more employees 'for and in behalf of himself, herself, or themselves.'" McCann, 2015 WL 832280, *3. The Kentucky Court of Appeals held that when the Kentucky General Assembly enacted KRS § 337.385, "it did not include any language allowing

representative or collective actions." Id.  "Instead, it plainly expressed that an action may be only brought by one or more employees on behalf of himself, herself, or themselves.  See KRS 337.385(2).  It did not permit actions to be brought on behalf of employees who are similarly situated." Id.  On March 26, 2015, the McCann plaintiffs filed a motion for discretionary review with the Kentucky Supreme Court.  See McCann v. Sullivan Univ. Sys. Inc., 2015-SC-000144.  On October 21, 2015, the Kentucky Supreme Court granted discretionary review.  See McCann v. Sullivan Univ. Sys. Inc., 2015-SC-000144.

On April 15, 2015, Defendants filed a motion to stay the proceedings to approve the settlement agreement.  On April 20, 2015, Plaintiffs filed a motion for approval of the class action settlement.  On July 13, 2015, the Court denied the motion to stay the proceedings and granted the preliminary approval of the settlement.  Defendants filed an appeal with the Sixth Circuit.  By order dated October 27, 2015, the Sixth Circuit denied the appeal finding that the Defendants' appeal did not qualify as an order granting or denying class certification under Fed. R. Civ. P. 23(f).  (DN 183.)

## II. MOTION TO DECERTIFY

Defendants now move the Court to decertify the class pursuant to Fed. R. Civ. P. 23(c)(1)(C).  Since the Court certified the class in 2012, two Kentucky Court of Appeals decisions and four federal district courts have ruled that a class cannot be certified pursuant to KRS § 337.385.  Defendants maintain that this wave of rulings has "undermined the reasons for certifying a class in the first place," and Defendants move the district court "to decertify the class on the basis of the new developments." In re FSL Management, LLC, No. 15-0504, Order (6th Cir. Oct. 27, 2015).  Additionally, Defendants contend that class certification in the present case violates the Rules Enabling Act.

**A.  Class Actions under KRS § 337.385**

KRS § 337.385 provides that actions "may be maintained in any court of competent jurisdiction by any one (1) or more employees for and in behalf of himself, herself, or themselves." KRS 337.385(2).  As discussed above, the Kentucky Court of Appeals in <u>McCann v. Sullivan University Systems, Inc.</u>, 2015 WL 832280 (Ky. App. Feb. 27, 2015), affirmed the dismissal of class claims brought under Kentucky wage and hour laws holding that when the Kentucky General Assembly enacted KRS § 337.385, "it did not include any language allowing representative or collective actions." <u>Id</u>. at *3.  "Instead, it plainly expressed that an action may be only brought by one or more employees on behalf of himself, herself, or themselves.  <u>See</u> KRS 337.385(2).  It did not permit actions to be brought on behalf of employees who are similarly situated." <u>Id</u>.  Other Federal District Courts have reached the same conclusion finding that wage and hour claims under KRS § 337.385 "are not viable class actions under Kentucky law." <u>Anderson v. GCA Servs. Group of North Carolina, Inc.</u>, 2015 WL 5299452, *2 (W.D. Ky. Sept. 9, 2015); <u>Green v. Platinum Restaurants Mid-America LLC</u>, Civil Action NO. 3:14-CV-439 (W.D. Ky. Feb. 24, 2015); <u>Davenport v. Charter Communications LLC</u>, 35 F. Supp. 3d 1040, 1048 (E.D. Mo. 2014).  On October 21, 2015, the Kentucky Supreme Court granted discretionary review in <u>McCann</u>.  Accordingly, had the parties had not reached a settlement in this matter, the Court would stay the action pending resolution of this issue by the Kentucky Supreme Court, instead of decertifying the class as argued by the Defendants.

**B.  Settlement**

Defendants maintain that the Court retains authority to decertify the class until entry of final judgment based on new developments in the law.  Defendants contend that the wave of rulings by federal district court's since the Kentucky Court of Appeals decision in <u>McCann</u>

supports their argument that new developments in the law require decertification of the class in the present case.

The Court disagrees.  The wave of rulings cited by the Defendants regarding the interpretation of KRS § 337.385 in relation to class action claims does not alter the fact that the Defendants voluntarily settled this wage and hour class action. "An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, *i.e.*, offer and acceptance, full and complete terms, and consideration." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 384 (Ky. App. 2002). See also Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 105 (Ky. 2003) (citation and internal quotation marks omitted); Hines v. Thomas Jefferson Fire Ins. Co., 267 S.W.2d 709, 711 (Ky. 1953);  McKim v. Newmarket Technology, Inc., 2008 WL 754739, *4 (W.D. Ky. March 18, 2008).   "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts . . . ." Cantrell, 94 S.W.3d at 385 (citations omitted).

As explained in the Court's July 13, 2015, Order denying the Defendants' motion to stay, the terms of the settlement agreement had been fully and unambiguously agreed upon by the parties no later than March 20, 2015 – interestingly, almost a month after the Kentucky Court of Appeals issued the opinion in McCann.  The email exchanges between the parties dated March 19 and March 20, 2015, reflect an agreement "on the terms of the settlement agreement." (Abate's March 19, 2015, Email.)   Considering the nature and scope of the parties' email communications, the joint status report filed with the Court, and the settlement agreement tendered to the Court, the Court was, and still is, persuaded that the parties entered into a binding contract under Kentucky law.

## C.  Approval by the Court

Defendants also contend that the Court has the independent obligation pursuant to Fed. R. Civ. P. 23(e) to ensure that any certified class is appropriate under the law regardless of the agreement between the parties.  Fed. R. Civ. P. 23(e)("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.")

First, "[t]he requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying agreement." Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010)(citing In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008). See also Kinder v. Northwestern Bank, 2013 WL 1914519, *3 (W.D. Mich. April 15, 2013); Dick v. Sprint Communications Co., L.P., 297 F.R.D. 283, 295 (W.D. Ky. 2014).  Consequently, the fact that judicial approval of a class action settlement is needed "does not affect the binding nature of the settlement contract." Kinder, 2013 WL 1914519, *3 (citing Ehrheart, 609 F.3d at 593).

Second, the purpose of Fed. R. Civ. P. 23(e) is to protect the absent class members, not the defendants in a class action "who are in a position to protect their own interests during negotiations." Ehrheart, 609 F.3d at 594.   If the Court were to accept Defendants' argument, "the settlement process would become meaningless since either party to a class action settlement (or any other type of settlement that requires court approval) could back out of an agreement at any time before court approval and avoid any legal repercussions for breaching the earlier offer and acceptance." Id.

Third, at the time the parties entered into their settlement agreement, McCann was not settled law in Kentucky.  For instance, in State Farm Ins. Co. v. Edwards, 339 S.W.3d 456 (Ky.

2011), the Supreme Court of Kentucky held that citation and reliance by State Farm on a non-final Court of Appeals case in which discretionary review had been granted was improper holding that "[w]hile CR 76.28(4)(c) now permits the citation of unpublished appellate opinions rendered after January 1, 2003, the rule does not extend to opinions that are not final, for clearly there can be no precedential value to a holding that is still being considered." State Farm Ins. Co. v. Edwards, 339 S.W.3d 456, *459 n. 2 (Ky. 2011)(citing Alexander v. Commonwealth, 220 S.W.3d 704 (Ky. App. 2007)).   Under the holding of Edwards, because McCann was not final at the time of the settlement, there is no precedential value to its holding.   Thus, contrary to Defendants' argument, McCann did not prohibit the settlement of this wage and hour class action.   Likewise, McCann does not deprive the Court of the authority to bind absent class members that do not affirmatively opt-out of the settlement, render the absent class members outside the "zone of interest," or prohibit the Court from approval of the settlement under Fed. R. Civ. P. 23(e).   See also Bankers Trust Co. v. Wright, 2010 WL 1511668 (Ohio App. April 16, 2010).

Furthermore, the anticipated Kentucky Supreme Court decision in McCann does not affect the validity of the settlement agreement in the present case, nor the Court's ability to approve the settlement agreement.   For years, Kentucky and Federal Courts have approved class settlements of Kentucky wage and hour claims brought pursuant to KRS § 337.385.   "[C]hanges in the law after settlement do not affect the validity of the agreement and do not provide a legitimate basis for rescinding the settlement." Ehrheart, 609 F.3d at 595.   "[F]avorable change in the law post-settlement does not give a settling party a basis to repudiate an otherwise valid settlement agreement." Id. (citing Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 273 (3d Cir. 2002).   Even if Defendants' decision "to settle was improvident in hindsight, the decision has

been made and cannot be revisited." Ehrheart, 609 F.3d at 595 (internal citations omitted).  The Defendants must bear "the consequences of [their] informed, counseled and voluntary decision" to settle. Id.  "It is essential that the parties to class action settlements have complete assurance that a settlement agreement is binding once it is reached."  Id. at 596.  "The fact that a settlement agreement is governed by Rule 23 does not diminish its enforceability as a contract." Id. "Where, as here, the parties have executed an agreement, a party cannot avoid its independent contractual obligations simply because a change in the law confers upon it a benefit that could have altered the settlement calculus."  Id.

Accordingly, the Court finds that "the fact that the settlement agreement is a class action settlement governed by Rule 23 does not affect the enforceability of the agreement as a binding contract," id., or the Court's ability to issue final settlement approval.

### D.  Rules Enabling Act

Defendants argue that class certification violates the Rules Enabling Act, which provides that the rules of procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The current issue before this Court is not whether the class certification violates the Rules Enabling Act.  The issue is whether the approval of a settlement under Rule 23 runs afoul of the Rules Enabling Act.

Contrary to Defendants' argument, the Court's approval of the parties' settlement did not extend to the Plaintiffs a substantive right that they could not have asserted in state court.  "[A] class-action settlement—like any settlement—is a private contract of negotiated compromises." Marshall v. National Football League, 787 F.3d 502, 512 (8th Cir. 2015).  "The agreement is not a 'substantive adjudication of the underlying causes of action,' and therefore, approval of the settlement agreement does not implicate the Rules Enabling Act." Id. (citing In re Baby Prods.,

708 F.3d 163, 173 n. 8 (3d Cir. 2013)("Because a district court's certification of a settlement simply recognizes the parties' deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action, we do not believe the inclusion of a *cy pres* provision in a settlement runs counter to the Rules Enabling Act." (internal quotation marks and citation omitted)); <u>Sullivan v. DB Invs., Inc.</u>, 667 F.3d 273, 312 (3d Cir. 2011) (en banc) ("[T]he proposed settlement could not violate the Rules Enabling Act since a court's approval of a voluntary settlement, by nature a compromise of rights, does not affect substantive state rights." (internal quotation marks omitted)).

Accordingly, the Defendants' motion to decertify the class is denied.

### III. FINAL APPROVAL OF SETTLEMENT AGREEMENT

The parties to this litigation have entered into a Settlement Agreement which, if approved, would resolve this class action. Plaintiffs have moved for final approval of the Settlement Agreement and for attorneys' fees, costs, expenses, and incentive awards. The Court held a final fairness hearing in this matter on December 10, 2015. No objections were filed with the Claims Administrator.

#### A. Settlement Terms and Notice

The stipulation of settlement provides for a cash settlement of $1,040,000 in consideration for a release of claims by the Class Members for any wage and hour violations. The parties have calculated the payments to the Class Members based on their hours worked and weeks of employment arriving at a total payment from the settlement of $603,497. Each class member is treated equally as the other class members in his or her sub-class. Further, "the proposed settlement is more than adequate because it allows class members to recover damages that would otherwise be beyond their reach if proceeding individually." <u>Spine and Sports</u>

Chiropractic, 2015 WL 1976398, *2.  Furthermore, a fund of $25,000.00 will be set aside to compensate employees who do not appear in Defendants' records for the hours they worked while employed by Defendants.

    In addition to paying claims of the class members, the settlement fund will be used to pay attorneys' fees and expenses.  Class Counsel has requested an award of $250,000 in attorney fees, which represents 24% of the total settlement.  Additionally, Class Counsel has requested an award of costs and expenses in the amount of $7,085.96.  Plaintiffs are seeking incentive payments for the class representatives in the amount of $140,000.  Further, the parties agreed to retain Analytics, Inc., to administer the class for a fee of up to $25,000.00.  (DN 181 at 6 n. 20, 8.)  Plaintiffs' counsel represents that payment of attorneys' fees, expenses, claims administration, and/or incentive payments will not reduce the awards to the Class Members.  Further, any left-over settlement proceeds will be awarded to the class on a *pro rata* basis.

    The current proposed settlement of this case was preliminarily approved by the Court on July 13, 2015. Notices of the proposed settlements and the fairness hearing were provided in accordance with the Court's Order.  On September 11, 2015, Analytics mailed the approved class notice, opt out form, and personal letter to the last known address of 392 class members. (Caroline Barazesh Aff. at ¶ 5.)  Additionally, Analytics arranged for the publication of the approved short form notice in the *Louisville Leo* newspaper on September 15, 2015, and September 23, 2015.  (Id. at ¶ 6.)  The Court conducted a fairness hearing on December 10, 2015.

### B. Standard for Settlement Approval

    Pursuant to Fed. R. Civ. P. 23(e), a class action settlement must be approved by the Court before the case may be dismissed or compromised. "Three specific steps must be followed: (1)

the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must determine whether the proposed settlement is fair, reasonable, and adequate." Fussell v. Wilkinson, 2005 WL 3132321, *3 (S.D. Ohio Nov. 22, 2005)(citing Williams v. Vukovich, 720 F.2d 909 (6th Cir. 1983)).  Having satisfied the steps set forth above, the only remaining issue to be considered by the Court is whether the proposed settlement is fair, reasonable, and adequate.

"Preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. Objectors, therefore, have the burden of persuading this Court that the proposed settlement is unreasonable." Fussell, 2005 WL 3132321, *3 (citations omitted). See also In re Cincinnati Policing, 209 F.R.D. 395 (S.D. Ohio. 2002)(quoting Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983)).  Courts generally consider a number of factors in assessing the fairness, adequacy and reasonableness of the proposed settlement including the following: (1) the potential relief that plaintiffs may realize following a full trial on the merits balanced against the relief offered by the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the status of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections of the class members; and (7) the public interest. See In re Cincinnati Policing, 209 F.R.D. 395 (S.D. Ohio. 2002); In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 522 (E.D. Mich. 2003).

**C. Discussion**

Evaluated under the applicable standards, this Court finds that the Settlement is a fair, adequate, and reasonable resolution of this very complex case.  The settlement of $1,040,000 appropriately reflects the merits of the litigation balanced against the significant risks of the Class not prevailing.  With this proposed settlement, Class members will obtain the immediate

12

and certain benefit of a cash settlement.  If Plaintiffs were to have continued to litigate this case, they faced a substantial risk of decertification of the class. This factor therefore weighs in favor of the settlements.

Consideration of the possible expense, duration, and complexity of this litigation also weighs in favor of the proposed settlement. Although significant discovery has taken place, substantial additional effort and expense would be necessary to prepare the case for trial, including completion of discovery and motions for summary judgment. "[C]ertain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." In re Cardizem CD Antitrust Litigation, 218 F.R.D. at 525.

The status of the proceedings and the amount of discovery completed also favor acceptance of the proposed settlement.  Clearly, this is not a situation in which Plaintiffs' counsel decided to settle after a brief review of the cases.  Instead, the case has been pending for over five years.  In this case, Plaintiffs' counsel litigated complicated motions to dismiss; litigated and obtained class certification; conducted extensive discovery; conducted detailed investigative interviews of witnesses; and took numerous depositions.  "Given this extensive discovery, the Court is mindful that it 'should defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 502 (E.D. Mich. 2000)(quoting Bronson v. Board of Education, 604 F.Supp. 68, 73 (S.D. Ohio 1984)).  In light of the well-developed factual record, the Court finds that Plaintiffs' counsel understand the strengths and weaknesses of their position and are in an excellent position to assess the adequacy of the settlement proposal.

Furthermore, the Court finds that the settlement agreement is the product of arm's length negotiations between Plaintiffs' counsel and Defendants' counsel. Capable and experienced counsel in class action litigation represented both sides in reaching the settlement. Negotiations extended over a year. A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.'" Hicks v. Stanley, 2005 WL 2757792, *5 (S.D.N.Y. Oct. 24, 2005) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)). Accordingly, this factor also weighs in favor of the settlements.

Likewise, no objections to the proposed settlements were filed by any Class member, nor did any Class members appear at the fairness hearing to object to the settlement agreement.  As discussed above, copies of the Notice Packet was mailed to 392 class members.  Additionally, the summary notice was also published in the *Louisville Leo* newspaper.

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." In re Cardizem CD Antitrust Litigation, 218 F.R.D. at 530 (citation omitted).  Clearly, the public interest is served by the settlement since recovery has been obtained for such a large number of class members.

For these reasons, the Court concludes that the proposed settlements including the plan of allocation are fair, adequate and reasonable. The Court approves the settlement and the plan of allocation in this action.

### D. Attorneys' Fees

Having determined that final approval of the Settlement Agreement is warranted, the Court now turns to the issue of attorneys' fees, costs, expenses, and incentive awards. The Court

14

preliminarily approved an award of attorneys' fees of $250,000 which represents 24% of the total settlement, in addition to the award of expenses which the Plaintiffs' counsel had originally estimated to be approximately $7,085.96. The Court ordered Class Counsel to file an application for an award of attorneys' fees and cost in compliance with Fed. R. Civ. P. 23(h) and 54(d)(2). On August 24, 2015, Plaintiffs' counsel filed a motion for attorneys' fees and costs.  [DN 181].

In addressing the issue of attorneys' fees in a class action case, the Court must first determine if the lodestar or percentage approach is more appropriate.   In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9 (W.D. Ky. Aug. 23, 2010)(citing In re Cardinal Health Inc. v. Securities Litig., 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). The Court also considers six factors (collectively referred to as the Ramey factors): "'(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9 (W.D. Ky. Aug. 23, 2010)(quoting Moulton v. United States Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009) (quoting Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996)). See Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188 (6th Cir. 1974). An award of attorneys' fees must be "'reasonable under the circumstances.'" Id. (citations omitted).

### 1. The Lodestar Approach Versus the Percentage Approach

Class Council filed the application for attorneys' fees and costs on August 24, 2015. Class Counsel urges the Court to adopt the percentage approach to calculate attorneys' fees and determine the reasonableness of the fee. "With either method, the goal is to make sure that

counsel are fairly compensated." In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9.   "'The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.'" Id. (citing Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993)).   In the present case, class counsel requests a fee of $250,000 or 24% of the common fund.   This amount is within the generally approved 20 to 30 percent range and is less than the presumptive 25% award.   Furthermore, the Class Settlement Agreement and Release provides that Defendants would not object to a request for attorneys' fees in the amount of 25% or less of the gross settlement proceeds.

A cross-check under the lodestar method also demonstrates the reasonableness of the requested fees.   In assessing the reasonableness of the fee requested using the lodestar method, the number of hours reasonably expended by counsel is multiplied by their reasonable hourly rate.   At the fairness hearing, Class Counsel Michele Henry represented that approximately 1,000 hours of attorney time and 100 hours of paralegal time have been spent on the case.   Calculation of the appropriate fee using the lodestar method with an hourly rate of $250.00 for the attorney time and $100 for the paralegal time results in a fee of approximately $259,000.   Thus, the calculation of attorneys' fees under the lodestar method is more than the fee sought by class counsel and supports the requested award of $250,000.

### 2. The Six Ramey Factors

The Court must also find that the $250,000 figure is reasonable by analyzing the six factors set out above.   "District courts in this circuit generally consider the most important factors to be the value of the benefit rendered and the value of the services on an hourly basis." In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9

(citing In re Sulzer Hip Prosthesis and Knee Prothesis Liab. Litig., 268 F.Supp.2d 907, 930 (N.D. Ohio 2003) (citing Bowling v. Pfizer, Inc., 922 F.Supp. 1261, 1280 (S.D. Ohio 1996)).

### a. The Value of the Benefit

The Agreement provides that every individual in the class who was employed in a tipped position will be compensated in an amount equal to the applicable minimum wage for every hour he or she worked during the relevant time period, less the tipped minimum wage that was paid at the time of employment.  Additionally, every class member will be compensated at either the applicable minimum wage or his or her hourly wage (whichever is higher) for five hours for every week of employment.  This represents a reasonable estimate of the number of hours worked off-the-clock engaged in promoting the business, clean-up, set-up and meetings.

### b. The Value of the Services on an Hourly Basis

A cross-check under the lodestar method also demonstrates the reasonableness of the requested fees.  The Sixth Circuit has approved a district court's use of a lodestar cross-check in prior cases. See Bowling, 102 F.3d at 780. As noted above, Class Counsel Michele Henry represented that approximately 1,000 hours of attorney time and 100 hours of paralegal time have been spent on the case.  Calculation of the appropriate fee using the lodestar method with an hourly rate of just $250.00 for the attorney time and $100 for the paralegal time results in a fee of approximately $259,000.  Thus, the calculation of attorneys' fees under the lodestar method is more than the fee sought by class counsel and supports the requested award of $250,000.

### c. Whether the Services Were Undertaken on a Contingent Fee Basis

According to Class Counsel, this case was undertaken on a purely contingent fee basis. "[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a

recovery." In re Telectronics Pacing Systems, Inc., 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). Class counsel spent considerable time on this case at the risk of receiving no compensation. Therefore, this factor supports the reasonableness of the requested attorneys' fees.

> d. Society's Stake in Rewarding Attorneys

"'Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society.'" In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9 (quoting In re Cardizem, 218 F.R.D. at 534). In the present case, many of the class members are financially unable to pursue an action such as this on their own and may have damages that are too small to justify the litigation. "'Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process' and should be rewarded for their efforts." In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9 (quoting In re Rio Hair Naturalizer Prods. Liab. Litig., 1996 WL 780512, *17 (E.D. Mich. Dec.20, 1996)). The Court finds this factor is satisfied and supports the award of attorneys' fees.

> e. The Complexity of the Litigation

This case has presented numerous challenges, including multiple appeals to the Sixth Circuit, as well as extensive motion practices. Accordingly, this factor supports the reasonableness of class counsel's requested fees.

> f. The Professional Skill and Standing of Counsel Involved on Both Sides

As evidenced by the motion practice in this case and prior experience in other litigation, it appears to the Court that both former and current counsel for both sides are skilled attorneys who brought extensive experience and knowledge to the present case.

### F. Costs and Expenses

"'As with attorneys fees, an award of costs and expenses, is also a matter left to the discretion of the trial court.'" In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *12 (quoting In re Rio Hair, 1996 WL 780512 at * 19.). "'[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses.'" In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *9 (quoting In re Cardizem, 218 F.R.D. at 535). The cost as of August 24, 2015, are $6,222.96.  At the hearing class counsel requested $7,085.96 for costs and expenses, including $3,508.30 in deposition costs, $1,725.83 in mediator expenses, $233.00 in filing and service fees, and $755.83 in copies, postage, and travel.  These costs represent only 0.7% of the gross settlement.  Additionally, the Agreement provides for payment of up to $25,000 to Analytics for class administration.  Accordingly, the Court believes these costs and expenses requested are reasonable.

### G. Incentive Awards

Class Counsel is requesting $140,000 in incentive payments to the six named Plaintiffs: $30,000 each for Whitlock and Skyrm; $23,000 for Muncy; and $19,000 for the remaining class representatives.  At the hearing, the Defendants objected to the amount of the incentive awards noting that $140,000 was 20% of the total class settlement.  Defendants maintained that such high incentive awards were unusual.

 "The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined the circumstances justifying incentive awards."

Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010)(citing Hadix v. Johnson, 322 F.3d 895, 898 (6th Cir. 2003)). "District courts in this circuit have looked at the following factors in determining whether to approve incentive awards for class representatives: (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the class Representatives in pursuing the litigation." In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, *12 (citing  Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D. Ohio 1991)). See Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan, 995 F. Supp. 2d 835, 854-55 (S.D. Ohio 2014) (incentive awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case, or  where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives.").   Here, the representative Plaintiffs responded to document requests and were deposed.  The also advised class counsel on the restaurant industry and aided in analyzing the discovery.  Furthermore, in pursuing the litigation, class plaintiffs faced the risk of other restaurants not hiring them.  Because the class plaintiffs actively participated in the litigation, the Court finds an incentive award appropriate in this case.

However, in considering the amount of the incentive awards requested by class counsel in relation to the settlement amount, the Court finds that the incentive awards requested are excessive. While district courts in the Sixth Circuit routinely grant incentive awards to representative plaintiffs when the representative plaintiff actively participates in the litigation, a

quick survey of the case law reflects total incentive awards ranging from .0005 percent of the total settlement in large antitrust litigations to .033 percent of smaller settlement awards in other cases.  See e.g., Johnson v. Midwest Logistics Systems, Ltd., 2013 WL 2295880, *5 (S.D. Ohio. May 24, 2013) (approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement representing .027 percent of the settlement award in a Fair Credit Reporting Act case); Dillworth v. Case Farms Processing, Inc., 2010 WL 776933, *7 (N.D. Ohio Mar. 8, 2010) (approving enhancement awards of $6,000 and $4,000 in an FLSA case); E.E.O.C. v. Wal-Mart Stores, Inc., 2011 WL 6400160, *3 (E.D. Ky. Dec. 20, 2011)(incentive payments ranging from $13,500 to $3,500 totaling $270,000 of a $11,700,000 settlement representing .023 percent of the settlement award);   In re Polyurethane Foam Antitrust Litigation, 2015 WL 7348208, *12-13 (N.D. Ohio Nov. 19, 2015)(.0005 percent of the total settlement in antitrust case); Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, 2015 WL 1498888, *7 (E.D. Mich. Mar. 31, 2015)(.0055 percent of the total settlement in antitrust case); Smith v. CSX Transp., Inc., 2015 WL 4389574, *4 (N.D. Ohio June 18, 2015)(.025 percent of the total settlement in train derailment case); Spine and Sports Chiropractic, Inc. v. ZirMed, Inc., 2015 WL 1976398, *2 (W.D. Ky. May 4, 2015)(.026 percent of the total settlement in a Telephone Consumer Protection Act case); Hainey v. Parrott, 2007 WL 3308027, (S.D. Ohio Nov. 6, 2007)(.033 percent of the total settlement in § 1983 action).

After a review of the record and in accordance with the above-cited case law, the Court in its discretion awards a total incentive award of .045 percent of the total $1,040,000 settlement. This total incentive award is consistent with those awarded in cases involving smaller settlement amounts.  Additionally, none of the class members objected to the request for incentive awards for the representative plaintiffs.  Finally, the record reflects the significant contribution the

21

representative plaintiffs made in this litigation.   Based on the proportion of each class representative's incentive award requested by class counsel, the Court awards $10,029 each to Whitlock and Skyrm; $7,689 to Muncy; and $6,351 to each of the remaining class representatives.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that

1.  The motion by Defendants to decertify the class [DN 184] is **DENIED**.

2.  Final approval of the Class Action Settlement is **GRANTED**.   Pursuant to Federal Rule of Civil Procedure 23, the Court finds that the Settlement Agreement entered into by the parties is fair, reasonable, and adequate.  Pursuant to Paragraph 16 of the Settlement Agreement, on or before January 20, 2016, Defendants shall deposit one million fifteen thousand dollars ($1,015,000) with the Settlement Administrator.   The settlement funds shall be dispersed in accordance with the Settlement Agreement and this Opinion.  Pursuant to Paragraphs 15 and 16 of the Settlement Agreement, the calculation of the individual awards and distribution of the settlement fund, including attorneys' fees and incentive awards, do not occur until after the Effective Date of the Settlement Agreement.  The "Effective Date" is defined in part as the last date of . . .  "if an appeal, review, or writ is sought from the Judgment, the day after the Judgment is affirmed or the appeal, review, or writ is dismissed or denied." (Settlement Agreement ¶ 15.)

3.  Plaintiffs' motion for attorneys' fees and cost [DN 181] is **GRANTED**.  Class counsel are awarded attorneys' fees in the amount of $250,000 and litigation expenses and costs in the amount of $7,085.96.

4.  The Court approves incentive awards in the amount of $10,029 for William Whitlock and David Skyrm; $7,689 for Gary Muncy; and $6,351 for Michael Brown, Holly Goodman, and Kristin Moore.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

December 21, 2015

23